## WILSON *et al.*, *Appellants*, v. SCHOENLAUB.

1. **Deed of Trust:** DEFAULT. The recitals in a trustee's deed examined and *held* sufficient, *prima facie*, to show a default authorizing a sale.

2. ————: SATISFACTION. The evidence in this case examined and *held* to show that the notes, to secure the payment of which a deed of trust was given, were not paid off and satisfied.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB, Judge.

AFFIRMED.

*Vinton Pike* and *Jas. F. Pitt* for appellants.

The trustee's deed from McLean to L. V. Fleming conveyed no title, for three reasons: (1) It failed to recite any fact which would authorize it to be made. (2) At the building company's sale, R. B. Fleming bought his own paper, or, in other words, discharged his obligations, secured by the deed of trust, by paying $375, thus cancelling the deed under which the trustee's sale was made. (3) Because the debt which R. B. Fleming owed to L. V. Fleming, on account of the

building company transaction, was paid by the execution of a deed to lot 1, in block 26, before the foreclosure sale. And for these reasons the court erred in refusing the fifth, sixth, seventh and eighth instructions asked by plaintiffs.

*B. R. Vineyard* for respondent.

(1) At the time of the winding up of the business of the building company and the sale of its assets, Lewis Fleming bought the notes and paid for them. It made no difference that Robert Fleming attended the sale with L. V. Fleming, and bid off the notes for the latter, who paid for them, and to whom they were assigned. (2) The agreement of all the stockholders of the building company, including Robert Fleming, for the winding up of its business and the sale of its assets, authorized the sale of these notes to Lewis V. Fleming, who paid the money therefor and received assignment thereof.

BLACK, J.—Robert Fleming is the common source of title in this action of ejectment, brought to recover lots 10 and 11, in block 47, St. Joseph Extension. The plaintiffs claim through an execution sale, and the defendant claims through a prior deed of trust. The case turns upon the questions made in respect of a trustee's sale made under that deed of trust.

The deed of trust bears date November 28, 1874, and by it Robert Fleming conveyed the lots before mentioned, and also lots 1 and 2, in block 53, of the same extension, to McLean, in trust, to secure a note to the St. Joseph building association. The note is sufficiently described, and by it Fleming promised to pay to the association, or order, five hundred dollars, with interest at ten per cent.; "said interest payable monthly, on the first Monday of each month, and the principal payable

at one dollar on Monday of each week, according to the rules and regulations of said building company." The deed recites that Fleming had redeemed one share of stock in the fourth series, for which he executed the note above set forth. It goes on to provide that if Fleming shall pay off the share of stock so redeemed, the interest due thereon, and all other indebtedness due the company, according to its constitution and by-laws, then the deed shall be void; but if the debt and every part thereof shall not be paid, as above set forth, then the trustee may sell, etc. The four lots were sold by the trustee on May 14, 1880, and Lewis Fleming became the purchaser. For authority to sell, the trustee's deed recites: "Whereas default was made in the payment of said promissory note, secured by said deed of trust, by reason whereof," etc. Lewis Fleming conveyed the two lots in question to defendant by a warranty deed, dated October 20, 1882.

1. Objection was made to the trustee's deed on the ground that it did not show any default authorizing a sale. This objection, as we understand it, is based on the theory that, by reference to the constitution and by-laws, it will be seen the note was never to be paid; that the deed of trust secured nothing more than the "payment of dues," and no reference is made to a default in that respect. Looking to the constitution and by-laws of the association, we find the stock was divided into four series of five hundred shares in each series, each share to be paid for by a weekly payment of one dollar. When the funds on hand amount to five hundred dollars, that amount is to be awarded to some share, the holder agreeing to pay interest monthly on the amount advanced, and the share upon which the loan, as it is called, is made, is called a "redeemed" share; but the holder of it continues to pay one dollar per week, and the monthly interest, until all of the shares in the series are redeemed. For a failure to pay

"dues" for six months, the directory may cause the mortgaged property to be sold.

The person receiving the five hundred dollars has advanced to him the amount which it is contemplated he will be entitled to receive when there is money enough on hand to redeem all the shares of a particular series. But to entitle him to that amount in advance he must continue to pay one dollar each week, and to pay the monthly interest on the amount received in advance of other shareholders. These are the payments provided for in the note, and a default in making these payments is a default in the payment of the note. The recital in the trustee's deed is sufficient, *prima facie*, to show a default authorizing a sale. It is true persons holding shares not "redeemed" must also pay the one dollar weekly, but that does not affect the question in hand.

2. Lewis Fleming claims to have purchased the note from the building association, and it is contended that this purchase amounted to a payment of the note. The further claim of plaintiff is, that Robert paid this note to Lewis before the date of the trustee's sale. The evidence upon these questions is, in substance, this: The board of directors of the building association wound up the affairs of the company on November 6, 1877, by a sale of all of its assets. This was done by the written request of all of the shareholders, including those holding redeemed and unredeemed shares. Robert Fleming held three redeemed shares, and the company held his three notes, including the one before mentioned. There was then due upon these notes $407.45. The secretary says Robert bid in these notes at three hundred and seventy-five dollars, and that Lewis paid the amount and took an assignment to himself, which is endorsed on each note, and by it the company transferred each note to Lewis, stating that the interest of the company in each case is one hundred and twenty-five dollars.

On December 28, 1878, Robert conveyed to Lewis a lot, other than those before mentioned, for the recited consideration of four thousand dollars; and, on the thirty-first of the same month, Lewis gave back a writing which recites the last-named deed and then says : "The conditions are such that the above-named Robert B. Fleming, now owing the above-named Lewis V. Fleming various sums of money, and also security on notes for the above-named Lewis V. Fleming, one note in favor of Joseph Davis to the amount of four hundred dollars, one note in favor of Joseph Packard to the amount of twelve hundred dollars, with interest; also holding three notes of five hundred dollars each, which were given to the St. Joseph Building Company by the above-named Robert V. Fleming for money borrowed out of said company; the above-named Lewis V. Fleming having satisfied the above-named company for the said amount to keep the above-named Robert B. Fleming's property from being sold, as there were deeds of trust on said Robert B. Fleming's property to secure said notes; and, further, the above-named Lewis V. Fleming holds the individual note or notes of R. B. Fleming to the amount of two or three hundred dollars, one deed of trust against the above-named property to the amount of twelve hundred dollars ($1200) given to the Bartlett Brothers. If, after paying the above indebtedness, there is any balance left, the above-named Lewis V. Fleming is to pay said balance to Robert B. Fleming, as to the amount set forth in a deed on the conveyance of said property, or after selling said property, by the said Lewis Fleming, to best advantage."

The secretary of the association does say that the three notes were bid off by Robert Fleming, Lewis being present; but the proof is undisputed that Lewis paid the amount, and the company assigned them to him. There is no pretense that the deeds of trust, securing these notes, were satisfied of record, or were intended

to be satisfied. Had Robert been the purchaser of his own notes, then there would be some foundation for the claim that they were thereby paid; but it is manifest he bid them in for Lewis, and the latter had a right to take an assignment to secure himself. There is scarcely any evidence tending to show a payment, much less any evidence authorizing the court to declare a payment without any finding of fact. Such an instruction was asked and it was properly refused.

The agreement made by Lewis of date December 31, 1878, does undoubtedly convert the deed made to him, on the twenty-eighth of the same month, into a mortgage, as between Lewis and Robert. We cannot see that it has, or can have, any other effect. It is awkwardly framed, but enough appears to show that Robert was owing Lewis, and that the latter was security for the former, and that the property conveyed was encumbered. It contemplates a sale of the property, the payment of these debts, and the payment of the balance to Robert. We see nothing in it to show that Lewis took the property in payment of the specified debts. Lewis held the building association notes by assignment, and that carried the security. No fraud in these transactions is shown, and we see nothing in them to invalidate the trustee's sale as between the plaintiffs and the Flemings, much less as between the plaintiffs and defendant.

The judgment is affirmed; RAY, C. J., absent; the other judges concur.