J. FRANK DENT and GEORGE A. DENT, Defendants in Error, v. A. J. MATTHEWS, and FIRST NATIONAL BANK OF LIME SPRINGS, IOWA, Plaintiffs in Error.

Springfield Court of Appeals, May 9, 1919.

1. **MORTGAGES**: Assumption by Purchaser. Purchaser, assuming a mortgage on the granted property, becomes the primary debtor, and obligated to pay the indebtedness.

2. ———: Purchase or Payment: Presumption. Where a third party furnishes the whole or part of the consideration for the surrender of a note secured by mortgage, though this is done at the instance of the maker, and the note is then indorsed and delivered over by the holder and held by the third party it is presumed a purchase and not a payment is intended.

3. **ESTATES**: Merger. The doctrine that when a greater and lesser estate, held in the same right, meet in the same person, without any intermediate estate, the lesser merges in the greater and is extinguished, has many exceptions, especially in equity.

4. **MORTGAGES**: Merger. When the lesser estate, such as a mortgage, is acquired by the owners of the fee for the benefit of a third party, who contributes the whole or part of the consideration, no merger takes place, for such owner does not acquire and hold the lesser estate in the same right as he holds the fee.

5. ——: ——. Where the lesser estate is a deed of trust, the legal estate is in the trustee, and not in the owner of the equity of redemption, 'so that' the acquisition of the secured note by the owner of the equity of redemption does not merge the lesser and greater estate in such owner, for the reason that the legal estate is outstanding in the trustee, and thus intervenes to prevent the merger.

6. **ESTATES:** ——. Mergers are not favored either in law or equity.

7. ——: ——. Merger is a matter of intention, and, where unexpressed such intention is presumed from what appears to be the party's best interests.

8. **MORTGAGES:** ——. Where mortgagee of tract A, in order to purchase of mortgagor tract B free from incumbrances, arranged with hold of mortgage on B to transfer such mortgage to tract A, and accordingly, as part of the purchase price, indorsed without recourse, to mortgagee of B, the note secured by mortgage on A, the mortgagee of B at the same time releasing the mortgage on B, there was no merger of the mortgage on A.

In Error To Dent County Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*McGee & Bennett* and *R. L. Horsman* for appellant.

*G. C. Dalton* for respondent.

STURGIS, P. J.—This is a suit to restrain the foreclosure of a deed of trust with power of sale on one hundred and sixty acres of land in Dent County, Missouri. The defendants are the sheriff of said County, acting of substituted trustee, and the Bank of Lime Springs, Iowa, claiming to own the secured note. The trial court granted a permanent injunction, cancelled the secured note and defendants bring the case here by writ of error. The question presented is whether the note and deed of trust in question have been extinguished by payment of the note or by merger of the deed of trust in the fee title.

Dent v. Matthews et al.

The facts disclosed are that in November, 1913, Elizabeth Jones owned the land in question subject to this deed of trust securing a note for $1500 payable to J. J. Cope. This incumbrance had been placed on the land by a prior owner, one Hoodenpyle, who conveyed same to Elizabeth Jones subject to such incumbrance and this land, note and deed of trust are designated as the Hoodenpyle land, note or deed of trust. At the same time Elizabeth Jones also owned another tract of eighty acres of land in Dent County, known as the Gano tract, and on this she had placed a deed of trust to secure her note for $850, in favor of the defendant bank, while owning these two tracts of land, each incumbered as stated, Elizabeth Jones and J. J. Cope, owner of the Hoodenpyle note and deed of trust on the land now in question, agreed on a sale or trade of the Gano eighty acre tract by Elizabeth Jones to Cope at an agreed valuation of $2070. Cope wanted this Gano tract free of any incumbrance and suggested that Elizabeth Jones take the $1500 note secured by the Hoodenpyle tract, he paying the difference in money. This, Mrs. Jones was willing to do but did not know how to arrange to clear the Gano tract being sold to Cope of the $850, incumbrance held by the defendant bank. Cope further suggested that arrangements be made to shift the $850, incumbrance in favor ·of the defendant bank from the Gano tract to the Hoodenpyle tract now in controversy. This arrangement being suggested to the defendant bank, it agreed to the same provided the title to the Hoodenpyle tract was found good and it would have a first lien on such tract.

The defendant bank is located in Iowa, the home of Elizabeth Jones, and the business connected with consummating the arrangements so agreed upon was had with the bank of Salem in Dent County, Missouri. Elizabeth Jones and husband executed a deed dated November 18, 1913, conveying the Gano eighty acre tract to Cope. In order to clear this land of incumbrance the defendant bank assigned the $850 note held by it and secured

by deed of trust thereon to the bank of Salem giving it authority to release the same. No consideration was received by the defendant bank for so doing except that it was to have a first lien on the Hoodenpyle tract of one hundred and sixty acres. At the same time November 19th, Cope paid for the Gano tract by endorsing withont recourse the $1500 note against the Hoodenpyle land and delivered same to the Bank of Salem and paid to it the difference in cash. No release of the deed of trust on the Hoodenpyle tract securing this note was made and this note was sent to the defendant bank in Iowa in exchange for the $850 note on the Gano tract. About a month later, December 12th, the Bank of Salem released the deed of trust on the Gano tract and the $850 note secured thereby was delivered up and cancelled as the law requires in making a release. On the same date a new note for $850 was executed by Elizabeth Jones to the defendant bank to take the place of, and representing the same indebtedness as, the $850 note so surrendered and cancelled. Elizabeth Jones also attempted to execute a new deed of trust to secure this new note on the Hoodenpyle tract but the description of the land is defective and perhaps ambiguous as it reads; ''The northeast quarter of (NE¼) of section 34'' when it should read: ''The northeast quarter (NE¼) of section 34.'' Sometime subsequent to the above transaction the plaintiffs sued Elizabeth Jones by attachment and on obtaining a judgment had this land sold under execution and themselves became the purchasers of her right, title and interest in the same.

Do the facts show a payment and full discharge of this $1500 note? We think not. It may be conceded that because Elizabeth Jones on acquiring the Hoodenpyle land assumed the indebtedness thereon she became the primary debtor and was obligated to pay the same. [Greer v. Orchard 175 Mo. App. 494, 161 S. W. 875, Gerardi v. Christie, 148 Mo. App. 75, 127 S. W. 635; Wonderly v. Giessler, 118 Mo. App. 708, 93 S. W. 1130.]

It is further shown that Cope the payee of said note had extended the time of payment on same by accepting the interest without the principal when the note became due and he was in no way demanding payment of same. All he wanted was to use said note in buying the Gano land. He knew that Elizabeth Jones could not clear the Gano land of the incumbrance of $850 thereon due the defendant bank except by said bank surrendering such security in exchange for other security, which all the parties agreed would be the Hoodenpyle tract which then secured the $1500 note. Elizabeth Jones' equity of redemption in the Gano tract would not and did not pay this $1500 note and the balance of the consideration was furnished by the defendant bank in consenting to release its $850 note and deed of trust on the Gano land. This is why Cope did not release the deed of trust on the Hoodenpyle land and have the note cancelled but endorsed the same without recourse and delivered it to the Bank of Salem for the defendant bank. Such too is the verbal evidence. The husband of Elizabeth Jones who transacted the business for her testified:

"Mr. Cope wanted to trade for the Gano property and I told him I couldn't trade on account of the mortgage to the bank. Mr. Cope suggested I take it up with the Bank and have them transfer the $850 mortgage on the Gano property to the Hoodenpyle property and they agreed to do so provided the record of the Hoodenpyle property was all right, and they corresponded with the Bank down here at Salem. They examined the title and according to the records there was some defects in the title and it was understood that they were to have this $1500 note and trust deed held by Cope, to hold as collateral. I also owed them some money at that time. I did not have the $1500 note, it was turned over to the bank here or to the bank up there, it was never in our possession at all. I understand the note was turned over to the bank here and afterwards to the bank at Lime Springs. The bank has held possession of

Dent v. Matthews et al.

this note ever since it was turned over by Mr. Cope. At the time I traded with Cope 'it was intended that this note be transferred to the bank. Mr. Cope wanted the Gano property clear so the bank released the $850 mortgage on it and took the mortgage for $850 on the Hoodenpyle tract. Mr. Cope was getting the Gano property clear of incumbrance for this mortgage. The bank was releasing the Gano property so Mr. Cope could get it clear on the trade; and was taking over the $1500 which was sent direct up to them."

The evidence of the cashier of the bank of Salem shows that his bank was acting as agent for the defendant bank and that it transmitted the $1500 note direct to the defendant bank after having it endorsed by Cope. Mr. Cope testified that Elizabeth Jones took the $1500 note in question as part purchase price of this Gano property and he paid the balance in money; that he turned the note over to the bank but does not know why he did this instead of releasing the record; that he would have "cancelled the record" if he had been requested to do so. It is evident that he was not concerned whether this note and deed of trust were cancelled and released or kept alive for the benefit of the defendant bank but endorsed the note so that the other parties could handle it as they saw fit.

It seems clear therefore that it was the intention of these parties to keep alive this $1500 note and deed of trust to the extent of protecting the defendant bank in releasing its note and deed of trust on the Gano property. Where a third party furnishes the whole or part of the consideration for the surrender of a secured note, though done at the instance of the maker, and the note is then endorsed and delivered over by the holder and held by the third party, the presumtion is that a purchase and not a payment is intended and when the facts are all consistent with this theory, it should be so held. [Bank v. Freund, 80 Mo. App. 657· 663; Wilson v. Schoenlaub, 99 Mo. 96, 100.]

Plaintiff's contention is equally untenable that the deed of trust securing the note in question became extinguished by reason of its merger in a larger estate held by Elizabeth Jones. The doctrine that when a greater and lesser estate, held in the same right, meet in the same person, without any intermediate estate, the lesser merges in the greater and is extinguished, has many exceptions especially in equity. [2 Pomeroy's Equity Jurisprudence (4'Ed.), sec. 791.]

When the lesser estate, such as a mortgage, is acquired by the owners of the fee for the benefit of a third party who contributes the whole or part of the consideration, then no merger takes place, for such owner does not acquire and hold the lesser estate in the same right as he holds the fee. In the present case it cannot be properly said that Elizabeth Jones acquired or held the note and deed of trust in question since by her consent it was endorsed and delivered to or for the defendant bank in consideration of the surrender and release of the note and deed of trust on the Gano tract.

It is also held that where the lesser estate is a deed of trust the legal estate is in the trustee and not in the owner of the equity of redemption, so that the acquisition of the secured note by the owner of the equity of redemption does not merge the lesser and greater estate in such owner for the reason that the legal estate is outstanding in the trustee and thus intervenes to prevent the merger. [Curry v. Lafon, 133 Mo. App. 163, 178, 113 S. W. 1132; Gerardi v. Christie, 148 Mo. App. 75, 92, 127 S. W. 635; Hospes v. Almstedt, 13 Mo. App. 270; Wead v. Gray, 78 Mo. 59, 66.]

This rule, though well established, seems to be rather technical and based on the old rule that a deed of trust divests the grantor of the legal title and vests same in the trustee. Under the modern view, however, a deed of trust is no more potent in this respect than a mortgage and the real effect of same is not to divest the grantor of title till after a foreclosure

of same or sale thereunder. The doctrine of merger, however, is itself technical and it may be that when two technicalities meet the court may disregard both. Mergers are not favored either in law or equity. [Bassett v. O'Brien, 149 Mo. 381, 389, 51 S. W. 107.] The true rule as to merger is well stated in a Pomeroy's Equity Jurisprudence (4 Ed.), sec. 791, thus:

"In short, where the legal ownership of the land and the absolute ownership of the encumbrance become vested in the same person, the intention governs the merger in equity. If this intention has been expressed, it controls; in the absence of such an expression; the intention will be presumed from what appears to be the best interests of the party as shown by all the circumstances; if his interests require the encumbrance to be kept alive, his intention to do so will be inferred and followed." [See, also, Wonderly v. Giessler, 118 Mo. App. 708, 93 S. W. 1130.]

In this connection it should not be overlooked that plaintiffs acquired by their purchase at the execution sale no more than the right, title and interest of Elizabeth Jones. At the time of such sale the deed records disclosed that this deed of trust was outstanding and unreleased. It is true that Mr. Cope, the payee, infomed plaintiffs that the note was paid, and so it was so far as he was concerned, but plaintiffs also knew that Cope had endorsed such note and delivered it to another party without making any release or cancellation of the deed of trust. Plaintiffs were seeking to collect a small debt of seventy-five dollars against Elizabeth Jones and proceeded against this land by attachment and execution, she as well as defendant bank being a non-resident. This one hundred and sixty acres of land is apparently worth at least $1500. If plaintiffs prevail they will presumably acquire this land free of incumbrance except as to one forty acres. Defendant will have lost its $850 debt except as same may be collected by sale of the one forty acre tract, since Elizabeth Jones is insolvent. Plaintiffs cannot

claim to have been induced to buy this tract of land for full value relying on its being clear of this incumbrance. The plaintiffs have appealed to a court of equity and while equity should and does follow the law in doing so it applies equitable principles.

The plaintiffs are not, we think, entitled to an absolute injunction against foreclosing this deed of trust and declaring the note secured thereby fully paid and discharged. Nor should the court dismiss plaintiff's bill but having acquired jurisdiction should proceed to a full determination of the case. While something is said as to the note and deed of trust in question being taken and held as security for some other indebtedness of Elizabeth Jones to the defendant bank, we find nothing substantial in this claim, at least as against the plaintiff's rights. The court should, therefore, ascertain the amount due the defendant bank on this $850 indebtedness and permit plaintiffs to pay the same or into court for defendant's benefit and hold the land. On so doing the $850 note and deed of trust should be cancelled and released. A permanent injunction should then be granted as was done in the present case. If plaintiffs decline to pay the amount due on the $850 indebtedness to defendant bank, the temporary injunction should be dissolved and a foreclosure be permitted for the amount so found to be due. To this end the judgment is reversed and the cause remanded. *Bradley* and *Farrington, JJ.*, concur.