CITY OF GALLATIN v. HOMER FEURT ET AL., Appellants.—50 S. W. (2d) 1027.

Division One, June 13, 1932.

*Dudley & Brandom* for appellants.

*Dean H. Leopard* for respondent.

898

STURGIS, C.—This is a suit for specific performance of a contract to convey a tract of land and for an accounting and judgment as to the terms on which defendant Homer Feurt shall convey the land to the city of Gallatin. The essential question in the case is whether defendant Homer Feurt shall convey the land in controversy to the city subject to the payment of both or only one of two notes for $1,000 each secured by a deed of trust on such land. The plaintiff claims the right to have the land conveyed to it encumbered by only one of such notes, and defendant is willing to and has offered to convey it to plaintiff subject to both secured notes, but not otherwise. Numa F. Feurt is the wife of defendant Homer Feurt and is made a party defendant not only to divest her of any right of inchoate dower in the land, but because at the time the suit was commenced she claimed to be the owner of the disputed note for $1,000 secured by the deed of trust and which plaintiff desires to get rid of. Pending this litigation, defendant Numa F. Feurt transferred and assigned this disputed note to the defendants Dudley & Brandom, a firm of lawyers, and they were then made parties defendant and very naturally seek to uphold the validity of this note as a live and existing lien on this land.

The real controversy centers on this secured $1,000 note which defendants insist is a valid and existing lien on this land under the deed of trust thereon, while plaintiff says such note was paid off and discharged by defendant Homer Feurt, the maker thereof, or that the lien of such note merged in the fee by reason of Homer Feurt being the owner of the lien and the fee at the same time; or, in any event, that if the city is compelled to pay this note, the same is a matter of set-off against an indebtedness of defendant Homer Feurt to the city as a surety on the bond of its defaulted treasurer. The trial court decided the case in favor of the plaintiff, and the defendants have appealed.

An understanding of the matter requires a brief statement as to the origin of this note and deed of trust and the relation of the various parties thereto. The city of Gallatin needed more land in connection with building a new water tower, but was without ready money to purchase same. It called on defendant Feurt, a local banker, to help it in acquiring the needed land, with the result that an agreement was made between the city and Homer Feurt by which Feurt agreed to himself buy this needed tract of land, hold the title as security, and later deed same to the city on payment of the purchase price in installments plus ten per cent per year for his profit. It was known by all parties that the needed land could be purchased from the owner, J. N. Walton, for $2,500. Thereupon on October 8, 1924, Feurt purchased the land for $2,500 and took a warranty deed to himself. The purchase price was paid $500 in cash and by Feurt giving the owner, Walton, two notes of $1,000 each, payable in one and two years, with interest, and secured same by deed of trust on the land. It is one of these notes that is the subject of this litigation. The land deal between Walton and Feurt was consummated with only a verbal understanding with the city as to the terms or purpose of the purchase, but some six months later a formal contract dated the day of Feurt's purchase was drawn up between Feurt and the city. The substance of this contract is that Feurt has purchased this land from Walton for the city and now "rents" it to the city for five years at a rental of $750 for the first year, $700 for the second year, $650 for the third year, $600 for the fourth year, and $550 for the fifth year, "and at the termination of this lease the party of the first part (Feurt) is to convey the above described real estate to the party of the second part by good and sufficient warranty deed." In the meantime the city was to have the use of the tract of ground and pay the taxes, insurance and repairs thereon. It was understood, though not in the written contract, that the plaintiff was to have the rent from a building on this tract. The plaintiff city knew of but had nothing to do with the arrangement by which Feurt paid the purchase price to Walton. Of course, he was obliged to have the

property clear at the end of the five-year "rental" period, and by that time the city was obliged to have paid the purchase price plus ten per cent represented by the rent installments. The city took possession of the land and built its water tower thereon. At or before the end of the first year, October 8, 1925, the city paid defendant Feurt the first installment of $750. Feurt had paid Walton $500 cash on the purchase price and the first secured note was due October 8, 1925. Walton wanted the money at that time and Feurt didn't have it. He wanted Walton to carry it longer by his paying $200 thereon, but Walton wanted all of it. Feurt was then connected with a local bank, the Farmers Exchange Bank, but his account there was slightly overdrawn. His wife, the defendant Numa F. Feurt, had an account in this same bank. Thereupon on December 23, 1925, defendant Homer Feurt drew his check for the amount of the note and interest, $1,016.85, on his bank, had Walton indorse the note, and exchanged the check for the note. When this check came in and was paid, it increased Feurt's overdraft in the bank and on December 28, 1925, Feurt drew his wife's check on her account for $1,200, which he cashed and placed in his own account, wiping out, or nearly so, his overdraft. In this connection Feurt placed the note with Walton's indorsement thereon in a package of his wife's private papers, securities, etc. She kept it thereafter till she assigned it to defendants Dudley & Brandom. No question is made as to the right of Feurt to draw this check and use his wife's money in this way. Mr. Feurt says his wife knew in a general way of his making this deal with the city and Mr. Walton, and both of them say that he informed her shortly of his taking up the note from Walton with her money and placing it with her papers. The note, the checks, and the books of the bank were produced and show the transaction was had in the way stated.

As we have stated, the plaintiff's contention is that when this $1,000 note secured by this land was "taken up" by Feurt, he was already the owner of the land subject to the deed of trust securing this note, together with the other note, and being then the owner of both the fee and the note carrying the lien on the same land, then under the doctrine of merger the lesser estate merged in the greater estate and the lien of the deed of trust was *pro tanto* merged and destroyed.

In this connection we note that while the wife, Mrs. Feurt, joined with her husband in making this note and deed of trust securing it, it is conceded that she did so as a matter of form and that the debt was that of the husband and that she really had no interest in this land, especially so since her husband, Homer Feurt, himself bought the land for the benefit of the city and held it for the city and as security for the purchase price only. In fact, the petition alleges

"that the defendant Numa F. Feurt is the wife of defendant Homer Feurt; that the title to the premises aforesaid was placed in the name of defendant Homer Feurt as a mere conduit of title and for the purpose of securing the indebtedness aforesaid, and for no other purpose, and the defendant Numa F. Feurt is not entitled to any marital rights therein." And we will say that at this time, so far as the record shows, there was no reason why the defendant Homer Feurt should make a sham or fraudulent assignment of this note to his wife or invest her money therein otherwise than in good faith. There is nothing in the record to show that at that time he was insolvent, nor was he indebted to anyone, and especially to the plaintiff, in any amount. What actually happened was that some months later on March 4, 1926, the Farmers Exchange Bank, with which defendant Homer Feurt was connected as an officer, failed and went into the hands of the Commissioner of Finance for liquidation. It so happened that at its failure the plaintiff city, through its city treasurer, had on deposit in this failed bank some $7,000 or more of the city funds, for which the city treasurer was liable on his bond, and it so happened that defendant Homer Feurt was one of the bondsmen of such city treasurer and liable to the city for any loss thereon.

At the time the present action was commenced, the defendant Homer Feurt was only contingently liable on the bond of the city treasurer. At the same time the city brought suit on the treasurer's bond making the defendant Homer Feurt a party defendant, and before the present trial was had such suit ripened into a judgment against the city treasurer and this defendant Homer Feurt, his surety, and, the pleadings in the present case being amended, such judgment was put in evidence showing that at the time of this trial Homer Feurt was indebted to the city on such bond judgment to the amount of $7,785.86. This judgment had not been paid and presumably the principal in the bond was insolvent.

The evidence is to the effect that James N. Walton, the owner and holder of the two notes of $1,000 each secured by the deed of trust on this land, intended in December, 1925, to have defendant Homer Feurt pay off or take up the one of said notes then past due, but by mistake he indorsed and delivered to Feurt the second one of said notes not due till October 8, 1926. He further testified that while he supposed that Feurt was paying off and discharging the note then due, that nothing particular was said as to that and that so far as he was concerned, it made no difference—that he got his money. The evidence of defendant Homer Feurt was to the effect that he did not intend to pay off and discharge this note, but to take it up, turn it over to his wife, and let her carry it; just as he did do. It further appears that the payee, J. N. Walton, sometime later transferred the

other $1,000 note to the First National Bank of Gallatin or one of its customers, and it is conceded that such note, which is in fact the first one due, is the yet outstanding unpaid and valid lien on this land. Nor was there any steps taken or proceedings had by the owner, J. N. Walton, or his assignee, to have the error, if any, corrected as to Homer Feurt taking up or receiving the wrong one of these notes. In fact, the decree in this case is that the note first due October 8, 1925, is an existing lien on this land and must be paid by plaintiff on receiving title to same. The court decreed that the title to this land be vested in plaintiff subject to the lien of the deed of trust securing only the one note for $1,000 and interest maturing on October 8, 1925, and that such deed of trust and the lien thereof be adjudged released, discharged and for naught held as to the other note of $1,000 maturing October 8, 1926, and that the real estate be released from such lien and encumbrance. From this decree the defendants have appealed.

It is apparent that the plaintiff by this proceeding is attempting to collect a part of its judgment against the defendant Homer Feurt as surety on the bond of its defaulting city treasurer by having the court cancel and hold for naught the lien of the deed of trust on the land to which it is entitled so far as it secures the note for $1,000 which the defendant Numa F. Feurt claims to own in her own right as a valid and existing lien thereon. The plaintiff contracted to purchase and pay for this land, in installments covering five years, the total sum of $3,250. Of this sum the plaintiff has actually paid the sum of $1,020. The land was encumbered by a deed of trust securing two notes of $1,000 each. The plaintiff concedes that there is outstanding and valid one of these notes on which there was due at the time of this trial $1,310.09, which plaintiff will have to pay. Plaintiff contends that it ought not to have to pay the balance of the contract price for this land because the vendor, Homer Feurt, has become and now is indebted to plaintiff on a judgment in a sum larger than the balance due on the land. It asserts the right to set-off. This would be all right except for the fact that a third party, Numa F. Feurt and her assignees, Dudley & Brandom, who are not parties to the judgment or in any way liable therefor, claim to own the other note secured by this deed of trust and are asserting its validity as a lien against this land.

■ One contention of the defendants is that defendant Homer Feurt had a right to assign and transfer this note to Numa F. Feurt, and she to defendants Dudley & Brandom, even after such note became due, free of any right of off-set by plaintiff growing out of any indebtedness he owes the plaintiff by reason of his suretyship on the city treasurer's bond. The argument is that even if the contingent liability on the bond could be considered an indebtedness with-

in the law relating to set-off, yet a negotiable note, even after it is due, may be transferred free of any equity or right of set-off except such as is connected with the note itself. As the indebtedness arising from Homer Feurt's suretyship on the bond is an independent transaction and in no way connected with the note, such would not follow the note into the hands of an assignee, though such assignment was made after the note came due. This contention is supported by the authorities. [Powers v. Woolfolk, 132 Mo. App. 354, 362; Hunleth v. Leahy, 146 Mo. 408, 418, 48 S. W. 459; Cutler v. Cook, 77 Mo. 388, 391; Gerardi v. Christie, 148 Mo. App. 75, 95.] ██ While this doctrine is applicable to the transfer of the note from Homer Feurt to Numa F. Feurt, a different situation exists as to the transfer from Numa F. Feurt to Dudley & Brandom in that this later transfer was made after this suit was commenced and Dudley & Brandom acquired their title pending this suit and with full knowledge of its pendency. They, therefore, are in no better position as to the plaintiff's right to set-off than their assignor, Numa F. Feurt. [State ex rel. v. Allen, 292 Mo. 360, 370, 239 S. W. 105; Archer v. Merchants' and Manufacturers' Ins. Co., 43 Mo. 434, 442.] If, however, Numa F. Feurt acquired this note in good faith and for value, then her assignees, Dudley & Brandom, have acquired and succeeded to all her rights.

Plaintiff's principal contention is that when Homer Feurt took up the note in question, being then the owner of the fee in the land securing same, such note as a lien was extinguished under the doctrine of merger, and that he could not thereafter transfer the same as a live existing lien on the land. ██ There is no doubt but that the question whether a mortgagor of land who takes up by assignment from the owner the note secured by such mortgage thereby extinguishes same or may keep it alive and transfer it to a third party, is one of intention to be gathered from the circumstances. Merger will not be decreed against the intention or interest of the owner of the equity that the mortgage lien should not merge. [41 C. J. 688; Chrisman v. Linderman, 202 Mo. 1. c. 619, 100 S. W. 1090; Dent v. Matthews, 202 Mo. App. 451, 458; Sater v. Hunt, 66 Mo. App. 527, 530; Hult v. Temple, 46 A. L. R. 317, and annotation, p. 322.] ██ It is the general rule that when the owner of a fee in a parcel of land subject to an encumbrance which such owner is primarily responsible for acquires the encumbrance, it is extinguished by merger in the fee, and such merger cannot be prevented by such owner of the fee having the secured debt in form transferred to him instead of being cancelled, and this is true in equity as well as at law. [Gerardi v. Christie, 148 Mo. App. 75, 93, 95, an opinion by GOODE, J.]

But there are many things which prevent this rule being applicable, one of which is that in order to effect or at least compel a merger, the legal title and the mortgage lien must vest in one and the same

person, and if there is an outstanding or intervening title, this prevents a merger. So it is held that merger does not take place as against the holder of a note secured by deed of trust when the owner of the fee acquires the secured debt, since the legal title is outstanding in the trustees. The reason for this is stated in the case last cited, to-wit: "For it seems an outstanding title in a trustee will prevent a merger of the deed of trust in the fee when the holder of the latter buys the secured debt, for he acquires no interest as regards the land, except to have it sold by the trustee in the event of a default; that is, does not acquire an estate which will merge in the larger estate he holds already, but only a right." [See, also, Dent v. Matthews, 202 Mo. App. 451, 457.]

█ Then it is also true that Homer Feurt did not own this land personally and absolutely since the petition concedes that he bought it conditionally for the plaintiff and was under contract to convey it to the city at a future date on payment of an agreed price. He thus held it in a fiduciary capacity. He did not hold the land and the secured note "in the same right." [10 R. C. L. p. 666.] While his contract with plaintiff contemplated that he would discharge this encumbrance against the land either before or at the time he was to convey it to the city, yet as far as plaintiff was concerned, he was not required to pay the secured notes when due but might well arrange to have some third person carry the secured debt for a longer period. The city was not interested further than to see that the encumbrance against this land was not in excess of the amount it yet owed for same. This situation was not unlike that present in Gerardi v. Christie, where it is said, page 95: "But as regards these plaintiffs, Gardner was in no sense obligated primarily, or at all, to pay the note in controversy and was in no real sense the owner of the fee. . . . According to the finding below Gardner not only acquired the note with his own funds and for the protection of his own interest and the interests of the Gerardis, but cherished the intention at the time, as was clearly established by his and Carter's testimony, not to pay the note and discharge the deed of trust, but to keep both alive and get them out of the hands of Carter, who was pressing for payment, and into the hands of a holder who would wait until money was raised by the pre-arranged plan of himself and associates, to take care of incumbrances. Under this view of the case, the question of merger becomes a secondary one, for when we get to the bottom facts they are that the note was not paid by Gardner, but bought, and he had a right to buy it as against the plaintiffs."

█ In the present case we think the facts demonstrate that Homer Feurt did not intend to pay off and discharge either of the notes for $1,000 in December, 1925, though one of them was then due, but intended to have his wife, Numa F. Feurt, take up and carry

this note till a more convenient time. The fact that the note was in no way cancelled, but was indorsed and delivered, indicates this. While Homer Feurt gave his personal check to the owner of this note, his account was already overdrawn at the bank and when his check was cashed at the bank he cashed the personal check of his wife, Numa F. Feurt, and placed it to his own credit to make good the overdraft. It is apparent that the wife's money, and not his own, was used to take up this note. As we have said, it was at once delivered to her and she held it as her own till she transferred it to Dudley & Brandom. These facts are not controverted.

It is true that Numa F. Feurt was one of the makers of the two notes secured by the deed of trust on this tract of land, but her signing same was largely, if not wholly, a matter of form. The petition correctly states that she had no interest in this tract of land, not even an inchoate right of dower, as her husband held it in trust for plaintiff. As between her and the payee of the note, she might be legally liable, notwithstanding she signed the notes and deed of trust because there was a supposed right of dower in the land. So far as plaintiff is concerned, she was in no way obligated to pay off and discharge these notes. There is no reason, therefore, why she could not take up and hold this note as a valid lien on this land.

In Skinner v. Hale (Conn.), 56 Atl. 524, where the husband claimed to have purchased and to be the owner of a mortgage on his wife's land, the court said: ''Whether the plaintiff had, as husband, any estate in the land mortgaged, is not, perhaps, clear from the finding, nor is the fact that he had or had not any such estate important in this case. It is clear that the plaintiff, in 1887, became, by assignment upon valuable consideration, the owner of the note and mortgage, and is still the bona fide owner and holder thereof; and it is also clear that at the time of the assignment the mortgage did not become merged in any legal estate which the plaintiff had or may have had in the land mortgaged; nor in the legal estate of the wife in said land, for the mortgage was not bought by nor for her; nor has any such merger taken place since. 'In cases of this kind courts of equity will always keep the estates separate, and uphold the mortgage, when it is required by the justice of the case or the intent of the parties.' [Cases cited.] The further rule, also, that, where one spouse becomes by assignment the owner of a mortgage made by the other, this does not of itself extinguish the mortgage, seems to be now well settled. [Cases cited.]'' [See Model Lodging House Assn. v. Boston, 114 Mass. 133, 139; Cormerais v. Weesselhoeft, 114 Mass. 550.]

We hold, therefore, that the court erred in holding and decreeing that the land in question should be conveyed to the plaintiff free of the deed of trust securing the $1,000 note taken up and held by Mrs.

Numa F. Feurt and by her assigned to the defendants Dudley & Brandom. We are not determining the amount due on this note nor on the plaintiff's contract with Homer Feurt. The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of this court. All of the judges concur.