Tom LONDOFF, Plaintiff-Respondent,

v.

Burton D. GARFINKEL, a/k/a Burton Garland, Defendant-Appellant.

No. 33842.

St. Louis Court of Appeals, Missouri.

April 27, 1971.

Julius H. Berg, St. Louis, for defendant-appellant.

Allen H. Surinsky, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

By this action plaintiff sought a judgment for a deficiency alleged to exist on a note after the foreclosure of the deed of trust which secured the same. Both parties waived a jury. The judgment rendered was in favor of plaintiff and against defendant for $5325.65, together with interest thereon at the rate of 8% per annum from December 19, 1967 and an attorney's fee of $500.00. Defendant's appeal followed.

On December 1, 1961, defendant, a real estate broker, executed and delivered to plaintiff also a real estate broker, his negotiable promissory note payable to the order of Mildred S. Londoff, plaintiff's straw party, which required monthly payments of principal and interest. The note was secured by a deed of trust of even date on property known and numbered as 4285 Gas Light Square, St. Louis, Missouri, in which it was stated that the note was for part-purchase money. On the same day, and as part of the same transaction, de-

fendant also executed and delivered to plaintiff a second note, for $3,500.00, likewise payable to the order of Mildred S. Londoff, plaintiff's straw party, which note was likewise secured by a second deed of trust on the same property.

At some unstated time subsequent to December 1, 1961, and for some unstated amount, plaintiff sold the first note and first deed of trust to Michael Durato and Dorothy Durato, his wife. The note was endorsed, "Without recourse against me, Mildred S. Londoff." At the trial plaintiff testified that at the time he sold the note to the Duratos he orally guaranteed to them that it would be paid. Defendant did make payments on the note until May 1, 1966, at which time the balance due thereon was $8,532.81.

Defendant defaulted, however, on the payment of the second note, and at the direction of the plaintiff the trustee under the second deed of trust sold the property at a foreclosure sale held on November 15, 1966, for the sum of $100.00. Plaintiff testified that that sum was paid to the trustee by a check drawn on the joint account of plaintiff and his wife, in which she deposited funds of her own from time to time. The trustee's deed conveyed the property to Cleda K. Miller, and recited that it was subject to the first deed of trust, the unpaid balance of which was $8,532.81. At the trial plaintiff testified Cleda K. Miller was a straw party for plaintiff and his wife, although in his deposition he had stated that she was his straw. After the foreclosure of the second deed of trust plaintiff prepared a statement, dated November 15, 1966, which showed the principal and interest due on that date on the second note and deed of trust, the expenses incident to the foreclosure, and the credits to which defendant was entitled for the $100.00 and rent adjustments. The statement also included seven items for the delinquent monthly payments due from May 1, 1966 to and including November 1, 1966, on the first note and deed of trust. As shown by the statement, the net balance due from defendant as of November 15, 1966, was $4,488.52.

The record reveals that defendant introduced a court file, not filed with us as one of the exhibits, which indicated that a suit for the deficiency on the second note had been filed in the name of Mildred S. Londoff against defendant, at some unstated time. No disposition of that suit was shown, but on cross-examination plaintiff was asked and replied, as follows:

"Q. The balance on this note of $3,500.00, that's been paid off, that note has been satisfied, has it not?

"A. The $3,500.00 note, yes, sir.

"Q. That's the note secured by the second deed of trust?

"A. Yes, sir."

The transcript does not show the date on which such satisfaction was paid.

On December 1, 1966, fifteen days after the foreclosure of the second deed of trust, plaintiff gave two checks to Mr. and Mrs. Durato, both of which were issued in the name of Gem Realty & Investment Co., a sole proprietorship owned by plaintiff. The first check was for $823.25 and bears the legend typed on the back:

"1st Deed of Trust on 4285 Gas
Light Sq.,St.Louis,Mo.;
B.D.Garland acct. Aug. 1st, 1966
thru Dec. 1st, 1966;  5 months @
$164.65 each

| | |
|---|---|
| Principal | $  585.81 |
| Interest | 237.44 |
| Total | $  823.25 |

　　No Collection Fee
Balance $8,414.38"

The second check to the Duratos was for $8,414.38 and bears the following legend typed on the back:

"Balance in full of unpaid
principal on B.D. Garland
1st D/T on 4285 Gas Light Square
St. Louis, Mo. after Dec. 1st,
1966 payment."

In exchange for the two checks the Duratos, without endorsing the first note, delievered it to plaintiff, together with the first deed of trust. Plaintiff testified that he did not pay off the first note, but repurchased it to fulfill the guaranty he had given the Duratos.

On January 1, 1967, the straw party, Cleda K. Miller, conveyed the property to Tom M. Londoff and Mildred S. Londoff, his wife. The conveyance was by a general warranty deed which did not contain any recital that it was made subject to the first deed of trust. At the trial the plaintiff testified that he and his wife became the owners of the property and that when they acquired real estate they customarily did so as tenants by the entirety. Plaintiff likewise insisted that while he owned the note and deed of trust, he and his wife owned the real estate.

According to plaintiff, he made a demand on defendant for the payment of the first note, but he was not asked, and did not state, the date or dates upon which such demand was made.

On December 19, 1967, at the instance of the plaintiff, the trustee under the first deed of trust held a foreclosure sale and the property was sold for $4,500.00. Title thereto was taken in the name of Georgiana Hillstropp, plaintiff's straw party. After giving credit for the proceeds of $4,500.00 on the note, there was a purported net deficiency of $5,325.65. Plaintiff read into evidence a part of defendant's deposition in which he stated, among other matters, that he had been represented by legal counsel at the foreclosure sale for the purpose of protecting his interest in the note.

Defendant read into evidence a part of plaintiff's deposition, in which plaintiff testified that in April or May, 1969, he sold the property to Mr. and Mrs. Jeremiah Landsman, for $5,500.00.

Defendant, who had his last name changed from "Garfinkel" to "Garland"

after December 1, 1961, did not testify at the trial. While he had pleaded various defenses, the only one on which he ultimately relied, and which he now advances on appeal, involves what is known as the doctrine of merger. A merger, at law as well as in equity, is defined to be when a greater estate and a lesser estate coincide and meet in one and the same person, in one and the same right, without any intermediate estate. Willis v. Robinson, 291 Mo. 650, 237 S.W. 1030; Phillips v. Jackson, 240 Mo. 310, 144 S.W. 112; Bassett v. O'Brien, 149 Mo. 381, 51 S.W. 107. As applied in the instant case, what defendant asserts is that plaintiff became the owner of the fee by reason of the foreclosure of the second deed of trust, and when he thereafter acquired the first note and deed of trust from the Duratos he repaid and extinguished that note, and thereby released defendant from any liability thereon.

In some of the earlier cases it was said that where the lesser of the two estates was a deed of trust, the legal estate was in the trustee and not in the owner of the equity of redemption, so that the acquisition of the secured note by the owner of the equity of redemption did not effect a merger of the lesser and greater estates in him because the trustee's outstanding legal estate intervened to prevent the merger. State, to Use of Peters v. Koch, 47 Mo. 582; Hospes v. Almstedt, 13 Mo.App. 270; Curry v. La Fon, 133 Mo.App. 163, 113 S.W. 246. However, in Dent v. Matthews, 202 Mo.App. 451, 213 S.W. 141, 143, the court referred to the foregoing rule as "rather technical," and remarked: " * * * Under the modern view, however, a deed of trust is no more potent in this respect than a mortgage, and the real effect of same is not to divest the grantor of title till after a foreclosure of same or sale thereunder. The doctrine of merger, however, is itself technical, and it may be that, when two technicalities meet, the court may disregard both. * *"

Our appellate courts have repeatedly said that, " * * * Mergers are not

favored, either in courts of law or of equity, * * *" Bassett v. O'Brien, 149 Mo. 381, 51 S.W. 107, 108; Dent v. Matthews, supra; Morgan v. York, Mo.App., 91 S.W.2d 244. In their respective briefs both parties agree that the more recent cases hold that the controlling factor of whether or not a merger occurs is the intention of the party who acquires the greater and the lesser estates. As said in Putney Realty Co. v. Frank, Mo.App., 52 S.W. 2d 1025, 1026:

" * * * It is no longer open to question but that, where the legal ownership of land and the absolute ownership of an incumbrance thereon becomes vested in the same person, the intention governs the merger in equity. The intention, whenever expressed, must control, otherwise that intention will be presumed which appears to be to the best interest of the parties as shown by all the circumstances, and, if his interest requires that the incumbrance be kept alive, his intention to do so will be inferred and followed. Devens v. Van Valkenburg, 192 Mo. App. 215, 180 S.W. 996; Dent v. Matthews, 202 Mo.App. 451, 213 S.W. 141."

From some of the cases it would appear that the courts are more prone to hold that a merger occurs when the owner of the fee acquires an encumbrance for which he is primarily responsible, than it will where (as in the case at bar), the owner of the fee acquires an encumbrance for which he is not primarily responsible. City of Gallatin v. Feurt, 330 Mo. 894, 50 S.W.2d 1027.

It will be remembered that to effect a merger the greater and the lesser estate must coincide in one and the same person, in one and the same right, without any intermediate estate. Plaintiff maintains that upon the foreclosure of the second deed of trust Cleda K. Miller held the record title to the property as the straw party for Mildred S. Londoff, plaintiff's wife, as well as plaintiff, by an estate by the entirety, and hence that no merger occurred when plaintiff, individually, acquired from the Dura-

tos the first note and deed of trust. The fact that after plaintiff acquired the first deed of trust from the Duratos, Cleda K. Miller conveyed the record title to Tom M. Londoff and Mildred S. Londoff, his wife, lends some support to plaintiff's contention, but the thrust of plaintiff's argument is at least weakened, if not destroyed, by the fact that the general warranty deed to plaintiff and his wife contained no provision that it was made subject to the first deed of trust as did the deed from the trustees of the second deed of trust, after its foreclosure, to Cleda K. Miller. Furthermore, the check from plaintiff and his wife to the trustee, purportedly drawn on their joint bank account, was not produced as an exhibit, nor, for that matter, any concrete evidence produced of the existence of such a bank account or that, if one existed, a part of the funds were those derived from Mrs. Londoff.

The theory upon which the trial court decided the case, as disclosed by its findings of fact and conclusions of law, was that plaintiff became the holder of the note by purchase from the Duratos for a valuable consideration, that in purchasing the note plaintiff did not intend to release defendant from his obligation on the note, that it was to the best interests of plaintiff, as shown by all the circumstances, to keep the note alive, and that there was no merger. As stated, defendant argues that it was plaintiff's intention, when he acquired the first note and deed of trust from the Duratos, to clear his title to the property, which he held in the name of his straw, Cleda K. Miller. In support of his argument defendant points to plaintiff's answer of "yes, sir" to the question asked of him by defendant on cross-examination, whether "If one owns property that has a deed of trust against it and wants to make his property free and clear of all liens and debts, isn't it customary to pay off the holder of the first to make this property free and clear?" The record shows that when the question was first propounded the plaintiff repeatedly said that he had not paid off the first

note but had purchased it and that on plaintiff's objection to the question the court allowed it to be asked only on the theory that it was, "* * * a testing question on qualification * * *." Of course, as plaintiff objected and the trial court recognized, the issue is not what may or may not be customary, but what was the intention of the plaintiff in the instant case when he acquired the first note and deed of trust from the Duratos.

We discern nothing in the endorsements typed on the back of plaintiff's checks, given to the Duratos when plaintiff acquired the first note and deed of trust from them, to indicate an intention on the part of plaintiff at the time to regard his acquisition of them as a payment of the note, rather than a purchase of them. Nor do we find, in the transcript, any other expression of plaintiff's intention made at that time. In the absence of any evidence of an expressed intention, we must presume that intention which appears to be to the best interest of the plaintiff as shown by all the circumstances. Putney Realty Co. v. Frank, supra.

We cannot accept defendant's argument that plaintiff's intention, when he acquired the first note and deed of trust from the Duratos, on December 1, 1966, was to merely clear his title to the property. Had that been his intention it would seem to logically follow that within a reasonable time thereafter plaintiff would have cleared his title by effecting a release of the note and deed of trust. The undisputed evidence is that plaintiff did not release the note and deed of trust, that he continued to hold them until the deed of trust was foreclosed on December 19, 1967, and that at some unspecified time he made a demand upon defendant for the payment of the note.

Furthermore, there can be no question of the fact that plaintiff, an experienced real estate broker, paid the Duratos a total of $9,402.28 on December 1, 1966, when he acquired the first note and deed from them. Had defendant shown that on that date the reasonable value of the property was in excess of that sum there might be some substance to defendant's argument that in acquiring the first note and deed of trust it was plaintiff's intention to clear his title to the property he already owned. Not only was no such evidence introduced, but that adduced indicates that between the date in 1961 when defendant executed and delivered the first note and deed of trust, and the date in 1969 when plaintiff ultimately sold the property to the Landsmans, its market value must have been steadily declining. For it is obvious that its reasonable value in 1961, when defendant first purchased it, must have been at least $18,000.00, else defendant, also an experienced real estate broker, would scarcely have executed two purchase-money notes totalling $18,000.00. Yet at the foreclosure sale under the first deed of trust, held on December 19, 1967, the property was bought in for only $4,500.00, although defendant had his attorney present at the sale to protect his interests in the note. And defendant himself adduced evidence that when plaintiff sold the property, in April or May, 1969, it brought only $5,-500.00.

It is apparent from its findings of fact and conclusions of law that the trial court reached the conclusion that the best interests of the plaintiff was to keep the note in question alive at the time plaintiff acquired it. We reach the same conclusion, for it accords with the rule announced in Putney Realty Co. v. Frank, heretofore quoted. We cannot conceive that an experienced real estate broker, having paid out more than $9,000.00 to acquire a note and deed of trust secured by property of problematical value, would entertain the intention to extinguish the note and release the maker's liability thereon. If, in the absence of an express intention, that intention will be presumed which appears to be in the best interest of plaintiff, as held in Putney Realty Co. v. Frank, supra, then the con-

trary must be inferred, that plaintiff intended to keep the note alive.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion of DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

BRADY, P. J., and WOLFE, J., concur.

DOWD, J., not sitting.