CLEARY and others (BANKING COMMISSION), Respondents, vs. BATZ, Administratrix, and others, Appellants.

*April 26—May 25, 1937.*

For the appellants there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *Ralph E. Axley* and *William Ryan,* all of Madison.

For the respondent Banking Commission there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Dorothy Walker* and *Daniel H. Grady.*

ROSENBERRY, C. J.   The evidence in this case involving as it did a large number of transactions was necessarily complicated and voluminous.   The principal questions presented upon the trial were questions of fact.   The findings of fact made by the trial court are assailed upon this appeal.   We have carefully examined the evidence in the light of briefs and argument of counsel, and it is considered that the findings of fact made by the trial court are fully sustained by the evidence.   Were it not for certain questions of law raised, the judgment would be affirmed without opinion.   We shall state only such of the facts as are necessary to disclose the matters involved in the determination of the questions of law raised.

The appealing defendants contend that the court erred in numerous particulars.   Assignments of error involve four principal questions: (1) Was there a valid agreement authorizing payment of the amount paid in settlement of certain preference lawsuits against the bank out of the moneys applicable to the payment of the $30,000 note?   (2) Was the $30,000 note given for the accommodation of the Farmers & Merchants Bank?   (3) Was the $30,000 note paid by the payment for the first four carloads of milk or by payment to the bank of the proceeds of the first four carloads of milk?

(4) Was the $10,000 second mortgage held by Kate Batz merged in the title of Kate Batz?

The Farmers & Merchants Bank, hereinafter referred to as the "bank," was capitalized for $40,000. In 1918 and for eighteen years prior thereto, G. A. Batz was president of the bank, during which time he owned one fourth of its capital stock. Erhart Batz, G. A. Batz's brother, was for many years prior to January 1, 1919, the cashier of the bank. Clemens P. Batz, the son of G. A. Batz, was secretary of the Sullivan Condensed Milk Company, hereinafter referred to as the "milk company." In April, 1918, the financial affairs of the milk company were badly involved and had been for some time prior thereto. Its indebtedness to the bank at one time, according to a statement made by Clemens P. Batz, consisted of $90,000 of worthless condensery checks, $12,000 of bonds of the milk company, two notes—$10,000 and $5,000—personal indebtedness of Clemens P. Batz. The precise amount of this indebtedness is not important. It very greatly exceeded the amount which the bank was authorized to loan to the milk company. At the time of the giving of the $30,000 note there remained unprotected about $35,000 of these protested checks. In order to take care of the situation, the milk company had sold to the bank ten thousand cases of milk at $6, the proceeds being credited by the bank upon the indebtedness to the bank. The bank examiners objected to this transaction and in order to relieve the bank and prevent the threatened bankruptcy of the milk company, G. A. Batz on April 15, 1918, executed the $30,000 note and mortgage in question, and with the proceeds purchased from the bank two carloads of milk held by the bank for which he agreed to pay $30,600.

The appealing defendants contend that this was for the accommodation of the bank. The trial court found to the contrary, and that finding is sustained. Thereafter the bank

undertook to dispose of the two carloads of milk for the account of G. A. Batz. The transaction was not completed until March 16, 1919. As the proceeds of the sale of this milk were received by the bank, instead of being applied upon the $30,000 mortgage, certificates of deposit representing the several amounts were taken out in the name of Erhart Batz, cashier. The total amount of these certificates was $27,999.42.

On May 18, 1920, G. A. Batz was adjudged mentally incompetent. On July 7, 1918, the Sullivan Condensed Milk Company was adjudged a bankrupt. The first proceeds of the two carloads of milk sold to G. A. Batz were received October 22, 1918. In July, 1918, G. A. Batz sold ninety-eight shares of his one-fourth interest in the bank to his brother. The trial court found that in 1918 the trustee in bankruptcy of the milk company began an action to recover for the benefit of the trustee in bankruptcy the value of the milk transferred to the bank, claiming that it constituted a preference. The trial court further found that it was agreed between the bank and G. A. Batz that the proceeds should be held in certificates of deposit in order to protect the bank against possible loss due to the bank's transaction with the milk company. It was pursuant to this arrangement that certificates were taken out in the name of Erhart Batz. The suit between the trustee and the bank was finally compromised and $3,500 was paid in settlement. The $3,500 was taken from the certificates held by Erhart Batz as heretofore stated. The remainder of the proceeds of the two carloads of milk were applied upon the $30,000 mortgage, for the foreclosure of which this action was begun.

The appealing defendants contend that this arrangement amounted to an agreement by G. A. Batz to answer for the debt, default, or miscarriage of the bank, was not in writing, was therefore void, and that the bank had no right to pay the

sum of $3,500 in settlement of the suit brought by the trustee. It is true that had there been a recovery in the suit brought by the trustee it would have been against the bank and therefore it was the bank's liability. However, when G. A. Batz consented that the proceeds of the sale of the milk should be held by the bank, in the name of Erhart Batz, as security for any loss which might be sustained by the bank by reason of its transactions with the milk company, the fund was appropriated to that purpose and no further evidence of the appropriation was required. Under these circumstances the transaction was not within the statute of frauds. It was so far as G. A. Batz was concerned an executed transaction. While the liability of the bank was actually satisfied by settlement of the trustee's suit in December, 1927, the money had been placed in the hands of the bank for the purpose of payment, which amounted to an appropriation of the fund for that purpose in 1918 and 1919. The arrangement was not made with the trustee to pay the debt of the bank. The arrangement was between G. A. Batz and the bank to protect the bank against loss. See *Johnson v. Bank of Sun Prairie* (1914), 155 Wis. 603, 145 N. W. 178; *Fosha v. O'Donnell* (1904), 120 Wis. 336, 97 N. W. 924; *Vogel v. Melms* (1872), 31 Wis. 306. By the terms of the agreement the fund was in the custody of the bank and was to be applied, first, to the discharge of any liability sustained by the bank on account of the milk company transactions; and, second, to the payment of the G. A. Batz mortgage. The fund remaining after the payment of the $3,500 was applied on the G. A. Batz mortgage, including six per cent interest upon the certificates. It is worthy of note that the note secured by the Batz mortgage bore interest at the rate of five and one-half per cent. The transaction involved no promise by G. A. Batz to answer for the debt, default, or miscarriage of the bank. He made a special deposit with the

bank for a specified purpose. After the making of the deposit no promise was involved.

Upon plaintiffs' motion to review, it is contended that there was a merger of the interest of Kate Batz as mortgagee with her interest as owner of the mortgaged premises. The facts are as follows: After the execution of the $30,000 mortgage, G. A. Batz executed a second mortgage to one R. O. Gmeinder. This mortgage was dated April 17, 1918, and by Gmeinder assigned to Kate Batz on April 17, 1923. After the death of G. A. Batz, who died intestate, the interest of four of the five children was conveyed to the widow by quitclaim deed dated July 2, 1925. It is claimed that the interest of Kate Batz as owner of a four-fifths interest in the premises and her rights as widow merged with her mortgage interest, and the mortgage was thereby extinguished as to that four-fifths interest.

The cases relating to the question of law involved are collected and analyzed in a note, 95 A. L. R. 89. Our attention has not been called to any case similar in its facts to the case at bar. Here, during the lifetime of G. A. Batz, Kate Batz held a second mortgage upon the property of her husband. After his death, apparently for a nominal consideration, four of the children conveyed their interest in the property to their mother. At that time it was well known to all of the parties that the $30,000 mortgage was outstanding and that a large sum remained due and owing upon it. Kate Batz did not testify upon the trial. There was some effort made to show that Kate Batz transferred the Gmeinder mortgage to Clemens P. Batz in 1931, but if a merger took place, it took place when the quitclaim deed was executed and delivered in 1925. The mortgagor was dead, the premises were not acquired from him but from his heirs. Whether or not there was a merger appears to be a question of intention of the parties to the transaction. The rule which seems

to be sustained by all of the authorities is, whether a union of title to a mortgage and the fee in the mortgaged property in the same person operates to extinguish the personal liability of the mortgagor for the debt secured depends on the actual or presumed intention of the person in whom the interests are united. Where the holder of a mortgage acquires the fee by conveyance from the mortgagor or a subsequent owner of the mortgaged premises, personal liability will be held to have been extinguished where a contrary intention does not appear.

We are unable to discover anything in the circumstances of this case from which it can be inferred that anyone was desirous of extinguishing the personal liability of G. A. Batz, who was at that time deceased. The acquirement by Kate Batz of the $10,000 mortgage indicated an intent on her part to hold the mortgagor liable on the mortgage. Under the circumstances it would be highly inequitable to hold that the mere conveyance of the title, which passed to the children upon the death of their father, to the mother operated as a satisfaction and discharge of the mortgage. It was neither to their interest nor her interest that such discharge take place, particularly so when there was an outstanding one-fifth interest.

It is considered that the circumstances of this case warrant the inference drawn by the trial court that it was not the intention of the parties to the transaction that there should be a merger of the two interests. While it is technically true that the title passed to the mother as to the four-fifths interest conveyed by the children by deed, they had no interest in a merger of the interests held by the mother. They were not liable upon the mortgage. The circumstances are quite different where there is an outstanding, hostile interest, as where a mortgagor, who is liable, conveys the fee to the mortgagee. It is very greatly to his interest that

his personal liability be extinguished. It was also greatly to the interest of Kate Batz against whom the judgment was rendered that the $10,000 mortgage should continue to exist and not be merged. Barren as the record is of any evidence of intention other than that to be drawn from the several transactions, the determination of the trial court must be sustained. See *Brown v. Loewenbach* (1935), 217 Wis. 379, 258 N. W. 379.

*By the Court.*—Judgment affirmed.