EQUITABLE SAVINGS & LOAN ASSOCIATION,
Plaintiff-Respondent,

v.

Randolph W. LENZ, Defendant-Petitioner-
Appellant,

NETWORK INVESTMENT REAL ESTATE
CORPORATION, Wayco, Inc., and Kenneth
Alles, a/k/a Kenneth E. Alles, Defendants. [No.
88–0687.]

EQUITABLE SAVINGS & LOAN ASSOCIATION,
Plaintiff-Respondent,

v.

Randolph W. LENZ, Defendant-Petitioner-
Appellant,

NETWORK INVESTMENT REAL ESTATE
CORPORATION, Wayco, Inc., and Kenneth
Alles, a/k/a Kenneth E. Alles, Defendants. [No.
88–0726.]

Court of Appeals

*Nos. 88–0687, 88–0726. Submitted on briefs November 1,
1988.—Decided January 24, 1989.*

(Also reported in 436 N.W.2d 902.)

For the plaintiff-respondent the cause was submitted on the briefs of *Peregrine Law Offices, S.C.* by *Robert B. Peregrine and Donald V. Kozlovsky,* of Milwaukee.

For the defendant-petitioner-appellant the cause was submitted on the briefs of *Foley & Lardner* by *Rodney H. Dow, Richard M. Esenberg and Pamela M. Schmidt,* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   This is an appeal from an order in two consolidated cases denying Randolph W. Lenz's motion seeking a declaration that judgments previously entered against him and Network Real Estate Investment Corporation were satisfied. We affirm.

Lenz guaranteed notes executed by Network in favor of Equitable Savings and Loan. The notes and guarantees were secured by two mortgages on various parcels of property. Network later transferred most of the parcels to Wayco, Inc., which assumed the indebtedness. Network and Lenz, however, remained liable

on the notes. Equitable subsequently sued Wayco, Network, and Lenz on the notes and, after Wayco sought protection under the Bankruptcy Act, the judgments at issue here were entered against Network and Lenz.

Of ninety-four parcels encumbered by the first of the two mortgages, thirty-four were conveyed by Wayco's trustee in bankruptcy to E & S Company, a joint venture between Equitable, J.G. Samuels, Inc. and, later, Mitchell Savings and Loan Association. Of the thirty-eight parcels encumbered by the second of the two mortgages, twenty-three were acquired by Heritage Bank through its foreclosure of a subordinate mortgage. Heritage conveyed the parcels to Equitable by a deed that provided that the conveyance would not operate as a merger of Equitable's mortgagee and fee interests. Equitable then conveyed the parcels to E & S. Three of the parcels were conveyed by Wayco's trustee in bankruptcy to E & S. None of the conveyances to E & S had anti-merger clauses.

Lenz argues that his and Network's liability on the mortgage notes secured by the property transferred to E & S was extinguished because those transfers, he contends, resulted in a merger of Equitable's mortgagee's interest with the fee.[1] The trial court rejected this argument on the ground that E & S is "an entity separate and distinct from Equitable and is not a part of the alter ego of Equitable." Since the underlying facts are undisputed, we independently review this legal conclusion. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

[1]Lenz's liability rests on his guarantees of Network's notes. As a general rule, extinguishment of the principal's liability discharges the guarantor. *Continental Bank & Trust Co. v. Akwa*, 58 Wis. 2d 376, 388, 206 N.W.2d 174, 181 (1973).

The theory behind the doctrine of merger was succinctly explained in *Thauer v. Smith,* 213 Wis. 91, 94–95, 250 N.W. 842, 843–844 (1933):

> When the owner of real estate executes a mortgage thereon, two interests or estates in the land are thereby created: one, the interest represented by the mortgage; and the other, the equity of redemption, or the fee title subject to the lien of the mortgage. Either of these interests may be conveyed.

Union of these two interests in the same entity extinguishes the mortgage debt, unless the parties to the conveyance intended otherwise. *Cleary v. Batz,* 225 Wis. 82, 89, 273 N.W. 463, 466 (1937). *See also In re Fox,* 808 F.2d 552, 554–555 (7th Cir. 1987) (deed from mortgagor to mortgagee results in extinction of debt secured by conveyed property unless mortgagee intended otherwise at time of conveyance) (interpreting Wisconsin law). As *Thauer* notes, however, "[t]here cannot be a merger unless the two interests or estates actually vest in the same person," a requirement the court called "fundamental." *Thauer,* 213 Wis. at 95, 250 N.W.2d at 844. *See also* 3 R.R. Powell & P.J. Rohan, *Powell on Real Property,* para. 459 (1987).

Recognizing that *Thauer*'s pronouncement remains the last word in Wisconsin, Lenz argues that Equitable and E & S were, in reality, the "same person" for the purpose of applying the merger doctrine. The record does not support this contention.

Equitable and Samuels entered into the original E & S joint venture agreement on March 25, 1986. The venture was formed to purchase and develop the parcels that are the subject of this action; Equitable was to supply the financing and Samuels was responsible for

general contracting and construction. Equitable and Samuels held equal interests in the joint venture and written assent by both was required for all land purchases as well as the sale of improved properties. The agreement specifically recognized Equitable's right as mortgagee to foreclose without any ensuing obligation to Samuels or E & S.

On August 31, 1986, Equitable, Samuels, and Mitchell entered into an amended joint venture agreement. The document was substantially the same as the joint venture agreement between Equitable and Samuels, but Equitable's half interest in the project was split with Mitchell. Equitable retained a thirty-seven and one-half percent interest in the joint venture and Mitchell was given a twelve and one-half percent interest. As before, the joint venturers agreed to share in the management, risks and profits of the venture according to their respective interests. Equitable and Mitchell also reserved their rights to foreclose on any property owned by E & S on which they held a mortgage without any ensuing liability to Samuels or to E & S.

■

E & S is an entity distinct from Equitable. As but one of the joint venturers, Equitable does not have the requisite degree of control over E & S's affairs to make it Equitable's mere alter ego. Equitable's mortgagee interest in the parcels did not, therefore, merge with the fee when E & S acquired the property.[2] Accordingly, the

---

[2]There is nothing in the record to support Lenz's accusation that E & S was formed as a mere subterfuge to avoid merger. Indeed, as Lenz recognizes, merger could have been avoided far more simply by the mere inclusion of an anti-merger statement in the documents of conveyance. *See Fox,* 808 F.2d at 554–555.

821

liability of Network and Lenz on the mortgage notes was not extinguished.[3]

*By the Court.*—Order affirmed.

---

[3]Since we have determined that there is not a union of the mortgagee's interest and the fee interest in the same entity, we need not consider Equitable's intent, an issue the trial court did not decide.