## UNITED SAVINGS AND LOAN ASSOCIATION, Plaintiff–Respondent,

v.

## OZARK CABLE AND RECLAMATION COMPANY, INCORPORATED, a defunct Missouri corporation, Statutory Trustee: Arlene A. Mitchell, Defendant,

and

## Arlene A. Mitchell, Defendant–Appellant.

No. 17507.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 15, 1992.

Richard D. Crites, Springfield, for defendant-appellant.

Nathan Williams, Sunrise Beach, for plaintiff-respondent.

CROW, Judge.

On November 6, 1984, Ozark Cable and Reclamation Company, Inc. ("Ozark") made a $150,000 note payable to the order of United Savings & Loan Association ("United"). Simultaneously, Duane C. Mitchell and Arlene A. Mitchell ("Arlene") signed a "Guaranty" of the note in favor of United.

On September 28, 1989, United filed a two-count petition averring the note was delinquent. Count I pled Ozark had forfeited its corporate charter August 10, 1989, Duane C. Mitchell was deceased, and

Arlene was statutory trustee for Ozark.[1] Count I prayed for judgment on the note against Ozark for $64,905.83, plus interest and attorney fees.[2] Count II prayed for judgment in the same amount against Arlene, individually, on the guaranty.

On motion of United for summary judgment per Rule 74.04, Missouri Rules of Civil Procedure (1991), the trial court entered judgment for United against Arlene in her capacity as statutory trustee of Ozark, and also against Arlene individually, in the amount of $64,905.83 principal, plus $13,042.21 accrued interest and a $1,500 attorney fee.

This appeal followed. The notice of appeal identifies the appellant as "Arlene Mitchell." This, coupled with the tenor of Arlene's brief, suggests she appeals in only her individual capacity, not in her capacity as statutory trustee of Ozark.[3] Her lawyer confirmed this at oral argument.

Arlene's brief presents one point relied on:

"The trial court erred in sustaining the motion for summary judgment, in that ... the pleadings and the affidavit of Appellant raised issues of fact concerning the failure of the Respondent to recover the proceeds of a life insurance policy which it held as collateral to secure the payment of the promissory note sued upon, when repeatedly requested by the Appellant, which proceeds would have paid all indebtedness allegedly due Respondent at the time of the requests by Appellant to recover the proceeds of the said ... policy, and therefore the Respondent was estopped from claiming any indebtedness to be due to it from Appellant."

■ In reviewing a summary judgment, we must view the record in the light most favorable to the party against whom it was entered, determine if any genuine issue of material fact exists which would require trial, and decide whether the judgment is correct as a matter of law. *Union Mutual Insurance Co. v. Brown*, 809 S.W.2d 144, 145 (Mo.App.1991).

The facts pertinent to Arlene's assignment of error appear in an affidavit filed in the trial court by her lawyer. The facts were unchallenged by United. The affidavit reads:

" . . . .

2. After the death of ... Duane Mitchell, in July, 1987, your affiant personally ... informed [a vice-president of United] of the existence of a $150,000.00 face value life insurance policy insuring the life of Duane Mitchell, issued by Transamerica Occidental Life Insurance Company, and that this policy had lapsed approximately two years prior to the death of the insured. Your affiant further informed the said vice-president that the assignment acknowledgement from Transamerica had indicated that [United] would be notified of the non-payment of premiums on such policy and of cancellation, and that it was your affiant's opinion that [United] could, if it would try, obtain a settlement with Transamerica ... on such policy, in excess of the amount which was owed for principal and accumulated interest upon the indebtedness, which serves the basis of the claim of [United] ... which at such time

---

1. Section 351.525, RSMo 1986, reads: "... the directors and officers in office when the forfeiture [of corporate existence and rights] occurs shall be the trustees of the corporation ... and may be sued as such; and the trustees shall be jointly and severally responsible to the creditors ... of the corporation to the extent of its property and effects that shall have come into their hands."

2. No issue is raised about Count I seeking judgment against the defunct corporation, Ozark, instead of its statutory trustee. Discussion of the subject is unnecessary in the disposition of this appeal. See, however: *SAB Harmon Indus-*

*tries, Inc. v. All State Building Systems, Inc.*, 733 S.W.2d 476, 482–83 (Mo.App.1987) and *Mercantile Trust Co., National Association v. Mosby*, 623 S.W.2d 22, 24 (Mo.App.1981).

3. The jurisdictional statement in Arlene's brief states: "The parties are a private individual and a corporate savings and loan association." The statement of facts begins: "This was an action by Respondent against Appellant, claiming that Appellant was liable to it, as a guarantor, of a promissory note executed by the corporate defendant Ozark Cable and Reclamation Company, Inc."

was between approximately $115,000.00 and $125,000.00.

3. Your affiant additionally wrote to [United] requesting [it] to pursue the claim against Transamerica ... and was later told by a representative of [United] that [United] felt that the claim against Transamerica ... was not worth pursing [sic], due to the probable cost of recovery.

4. Your affiant, then, on behalf of ... Arlene ... filed suit ... against Transamerica ... on the policy ... claiming that such insurance company was estopped from claiming that the policy had lapsed, since it had indicated not only to [United] ... but to ... Arlene ... that it would give notice of non-payment of premiums and of lapse, and that it had not given such notice.

5. Only after suit was filed by ... Arlene ... did [United] make a claim to Transamerica....

6. As a result of the ... claim ... by [United], as described in paragraph 5 above, Transamerica ... required the consent of both [United] and of ... Arlene ... to the settlement of such claim.

7. The claim and suit of ... Arlene ... against Transamerica ... as described in paragraphs 4 and 5 hereof were settled for the sum of $130,000.00.

8. If [United] would have pursued the claim against Transamerica ... when first requested by your affiant, ... the recovery of such claim would have been sufficient to pay the entire indebtedness which is the basis of the claim of [United] herein, and there would be no indebtedness alleged to be due [United] as set forth in the Petition herein.
 ...."

One of the provisions in the note was:
"[Ozark] agrees to take all necessary steps to administer, ... preserve, and protect the Collateral; and regardless of any action taken by Holder, there shall be no duty upon Holder in this respect. [Ozark] shall pay all expenses of any nature ... which Holder may deem necessary or proper in connection with ... the administration, ... preservation, pro-

tection of ... or the realization upon the Collateral...."

One of the provisions in the guaranty was:

"In case the Debtor shall fail to pay all or any part of the Liabilities when due ... according to the terms of said note, the Undersigned, immediately upon the written demand of Lender, will pay to Lender the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the Undersigned. Lender shall not be required, prior to any such demand on, or payment by, the Undersigned, to ... pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the payment of any of the Liabilities, or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral...."

In its judgment, the trial court ruled: "The guaranty ... Arlene ... executed provides that [United] was not obligated to first pursue other remedies or exhaust its rights with respect to collateral before insisting upon her performance of the guaranty; the promissory note specifically provides that the holder of the note had no duty with respect to the collateral; thus [the] defense of estoppel is unavailing...."

Arlene concedes: "Counsel has been unable to find any case law on point." According to Arlene, the only law which can be found is § 400.9–207, RSMo 1986. It reads:

"(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.
 ...."

Arlene acknowledges § 400.9–207 "does not explicitly give rise to a duty to dispose of or collect the collateral." However, Arlene directs us to the following passage from C.J.S.:

"At common law as well as under the Code, where commercial paper or securities such as stocks, bonds, or debentures are pledged as collateral, the duty of the holder of the collateral is not limited solely to the physical preservation of the collateral; the duty imposed is to exercise reasonable care for the preservation and protection of the value of the collateral so held. Accordingly, if collateral consisting of negotiable instruments matures before payment of the secured indebtedness the holder of the collateral must take such action as reasonable prudence suggests to preserve the value of the collateral, and this may include the taking of such steps as are necessary to collect the instruments." 79 C.J.S.Supp. *Secured Transactions* § 78, p. 85 (1974).

Arlene fails to explain how § 400.9–207 or the passage from C.J.S. applies here. The first sentence in § 400.9–207(1) requires a secured party to use reasonable care in the custody and preservation of collateral in its possession. Nothing in the record indicates United failed to do so in regard to the insurance policy. The second sentence in § 400.9–207(1) pertains to "an instrument or chattel paper." Arlene cites no authority suggesting the insurance policy falls within the definition of "instrument" (§ 400.9–105(1)(i), RSMo Supp.1988) or the definition of "chattel paper" (§ 400.9–105(1)(b), RSMo Supp.1988) as those terms are used in § 400.9–207(1). However, even if the policy did fall within either definition, § 400.9–207(1) would not aid Arlene inasmuch as it specifically allows parties to agree that the secured party has no duty to take steps to preserve rights in collateral. As explained *infra,* the parties made such an agreement here.

The C.J.S. reference is equally unhelpful to Arlene. It refers to commercial paper, securities, stocks, bonds, debentures and negotiable instruments. Arlene cites no authority indicating a life insurance policy is included in collateral of that description. Absent any authority, we are unpersuaded the excerpt from C.J.S. applies to a life insurance policy assigned as collateral.

The words and phrases in the note and guaranty must be given their plain, ordinary, and usual meaning. *Worthington Drainage Dist. v. Elm Tp. of Putnam County,* 339 Mo. 270, 96 S.W.2d 374, 375[1] (1936); *L & K Realty Co. v. R.W. Farmer Construction Co.,* 633 S.W.2d 274, 280[9] (Mo.App.1982). Applying that fundamental rule of construction to the pertinent portions of the note and guaranty (quoted earlier), it is incontestably clear the parties agreed United was not required to enforce any rights it may have had on the insurance policy before demanding Arlene fulfill her guaranty.

We detect no issue of material fact, and Arlene identifies none. The appeal hinges solely on whether the trial court was correct as a matter of law in holding United was not obligated to exhaust whatever claim it may have had on the insurance policy before seeking recovery from Arlene on the guaranty. Having determined the trial court ruled that issue correctly, we affirm the judgment.

PREWITT, P.J., and PARRISH, J., concur.