SAVANNAH PLACE, LTD., a Missouri Corporation, Respondent,

v.

Charles and Sandra HEIDELBERG, husband and wife, Appellants,

v.

Carol JONES and Carol Jones, trustee of the Carol Jones Revocable Trust dated December 31, 1987, Respondents.

No. 25070.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 31, 2003.

Application for Transfer Denied
Dec. 23, 2003.

Thomas Y. Auner, Janis L. Prewitt, Springfield, for appellants.

Rodney H. Nichols, John E. Price, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, for respondents.

ROBERT S. BARNEY, Presiding Judge.

Respondent Savannah Place Ltd. ("Savannah Place"), as assignee of two promissory notes, attendant deeds of trust, security agreements and guaranties relating to the two promissory notes, brought suit against Charles Heidelberg and his spouse, Sandra Heidelberg ("Appellants" and/or "Charles Heidelberg" or "Sandra Heidelberg"), to enforce the terms of the guaranties for the payment of the two promissory notes. Respondent Carol Jones, individually ("Carol Jones"), Respondent Carol Jones, as trustee of the Carol Jones Revocable Trust dated December 31, 1987 ("Jones Trust"), and Doug Garges, were also guarantors, but were not sued by Savannah Place.

In response to the suit commenced by Savannah Place, in pertinent part, Appellants seasonably brought a second amended counter-claim in one count against Savannah Place, seeking monetary damages, attorneys' fees, and costs for breach of fiduciary duty.[1]

Also, Appellants brought their second amended third-party claim in four counts against Carol Jones and Jones Trust, seeking monetary damages, attorneys' fees, and costs premised on fraudulent misrepresentation, breach of contract, promissory estoppel, and breach of fiduciary duty.

The Circuit Court of Greene County, after a bench trial, made findings of fact

---

1. We note that Appellants made no claim for contribution against their co-guarantors. In this connection *see Hammons v. Ehney*, 924 S.W.2d 843, 853 (Mo. banc 1996) and 74 Am.Jur.2d *Suretyship* § 178 (2001).

and conclusions of law, and entered judgment in favor of Savannah Place on its guaranty claims against Appellants, arising from their obligation under the two promissory notes, and awarded Savannah Place the amount of $1,649,541.55, inclusive of interest and attorneys' fees.

The trial court also entered judgment against Appellants and in favor of Savannah Place on Appellants' second amended counter-claim against Savannah Place, and against Appellants and in favor of Carol Jones and Jones Trust on Appellants' second amended third-party claims against Carol Jones and Jones Trust. Appellants now appeal, raising seven points of trial court error, discussed below.

The record shows that the underlying action arose out of the development of a residential subdivision in Taney County known as Savannah Place ("the subdivision"). The subdivision was owned by Richmond Heights, Inc. ("Richmond Heights"), a Missouri corporation in which Charles Heidelberg, Doug Garges, and Carol Jones were equal shareholders. Carol Jones was President, Charles Heidelberg was Vice–President, and Doug Garges was Secretary.

In connection with the development of the subdivision, Richmond Heights obtained two loans from Capital Bank of Southwest Missouri, predecessor in interest to Union Planters Bank. The two loans were in the amounts of $930,000.00 and $898,000.00, evidenced by two promissory notes, each dated August 31, 1994. The $930,000.00 promissory note was secured by a first deed of trust on the subdivision property and the $898,000.00 promissory note was secured by a second deed of trust on the same real property. As previously related, both promissory notes were personally guaranteed by Appellants, Doug Garges, Carol Jones, and Jones Trust.

Richmond Heights used the proceeds from the $898,000.00 promissory note for infrastructure and the proceeds from the $930,000.00 promissory note for the construction of the first 20 houses at the subdivision. It was contemplated that 192–193 houses would be constructed and sold. When construction began, Charles Heidelberg was overseeing the project.

Home sales in the subdivision began in 1994. The development of the subdivision went according to plan for the first six months to a year. However, the Branson, Missouri real estate market began to weaken, which resulted in the sale of fewer homes in the subdivision. Both loans had original maturity dates of September 6, 1995. Each loan was renewed and extended on several occasions so that both became due and payable on December 6, 1996. All the guarantors signed continuing guaranties with Union Planters Bank at the time of the last extension.

During the development of the subdivision a dispute arose with Colt Construction, Inc. ("Colt Construction"), a contractor hired by Richmond Heights to construct houses. Colt Construction sued Richmond Heights and Carol Jones and filed a *lis pendens* on the subdivision property. The *lis pendens* apparently further impeded lot and house sales in the subdivision. Because Richmond Heights had no money to defend the lawsuit, Carol Jones paid the attorneys' fees.

Later, as part of a settlement agreement with Colt Construction, the *lis pendens* was removed, after Carol Jones released a third deed of trust encumbering the subdivision that secured a prior loan Carol Jones had made to Richmond Heights.[2]

2. We discern that in its suit against Richmond Heights, Colt Construction claimed the third deed of trust was a fraudulent transfer by Richmond Heights to Carol Jones.

In the fall of 1996, there were numerous discussions concerning the problems associated with the subdivision. Discussions took place regarding the possibility of filing for bankruptcy protection, the possibilities of foreclosure on the subdivision, Carol Jones' decision not to advance any further loans to Richmond Heights, and Carol Jones' refusal to agree to any further extensions of the loans, now held by Union Planters Bank. Also of concern was the Colt Construction litigation.

By this time, the shareholders had become disenchanted with each other. In particular, Carol Jones was critical of Charles Heidelberg's handling of the construction project vis-à-vis Colt Construction. Carol Jones refused to lend any more money to Richmond Heights so long as Charles Heidelberg and Doug Garges "were involved in the project." These discussions culminated in Carol Jones, on December 13, 1996, acquiring the shares of stock in Richmond Heights held by Charles Heidelberg and Doug Garges, for $100.00 each.

Meanwhile, the Union Planters Bank loans matured on December 6, 1996, and were not paid by Richmond Heights. The loans were not extended. On or about December 31, 1996, Union Planters Bank initiated foreclosure proceedings on both deeds of trust. A trustee's sale on the second deed of trust was scheduled for January 28, 1997, and the foreclosure sale on the first deed of trust was scheduled for a later date.

At a special joint meeting of the directors and shareholders of Richmond Heights—consisting of Charles Heidelberg and Doug Garges as directors, together with Carol Jones as director and sole shareholder—there was unanimous consent given to Carol Jones, or an entity controlled by her, to bid on the real estate which was the subject of the foreclosure sale scheduled for January 28, 1997.[3]

On January 21, 1997, Carol Jones caused Savannah Place, Ltd., to be formed and incorporated. She was the sole director, sole shareholder, President, and Secretary of this new corporation. She then transferred all of the shares of Savannah Place to Jones Trust.

On January 28, 1997, Savannah Place acquired the Union Planters Bank loans, evidenced by an assignment of the two promissory notes and attendant deeds of trust, together with "[a]ll other security agreements, financing statements, guaranties and security documents of any kind securing the Notes" for the total sum of $1,035,466.13—paying $921,115.82 for the first promissory note and $114,350.31 for the second promissory note.[4]

Savannah Place then proceeded with the foreclosure sale on the *second* deed of trust at approximately 1:00 p.m. on January 28, 1997. Savannah Place was the sole bidder at the foreclosure sale and acquired the subdivision for a bid of $100,000.00, representing all but $14,350.31 of the amount due on the $898,000.00 promissory note secured by the second deed of trust, thereby leaving a $14,350.31 deficiency. The foreclosure sale on the first deed of trust, securing the $930,000.00 promissory note, was cancelled. According to the record, the first deed of trust has never been foreclosed upon or released of record.

---

3. The Colt Construction litigation with Richmond Heights was settled during this time period.

4. The assignment was recorded prior to the foreclosure sale of the second deed of trust. Also recorded at this time was a deed of trust from Richmond Heights in favor of Carol Jones.

Then, as previously set out, Savannah Place brought suit against Appellants based on their personal guaranties of the amounts then due under each of the two promissory notes. The trial court, *inter alia,* entered judgment in favor of Savannah Place in the total amount of $1,649,541.55, inclusive of principal, interest and attorneys' fees and denied all of Appellants' causes of action in their second amended counter-claim and second amended third-party claims. This appeal followed.

"The applicable standard of review is provided by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)." *Martin v. McEvers,* 104 S.W.3d 785, 787 (Mo.App. 2003). "Thus, the judgment of the trial court will be affirmed unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or applies the law." *Bus. Men's Assurance Co. v. Graham,* 984 S.W.2d 501, 505–06 (Mo. banc 1999).

"We view the evidence and all permissible inferences in the light most favorable to the judgment, disregarding all contrary evidence." *Black v. Adrian,* 80 S.W.3d 909, 911 (Mo.App.2002). "Due deference is afforded the trial court with respect to the credibility of witnesses and the weight given their testimony." *Id.* This is so " 'even if the evidence could support a different conclusion.' " *Martin,* 104 S.W.3d at 787 (quoting *King v. King,* 793 S.W.2d 200, 202 (Mo.App.1990)). "This [C]ourt gives considerable deference to the evidentiary and factual evaluations by the trial court; however, no such deference is given where the law has been erroneously applied." *Bush Constr. Machinery, Inc. v. Kansas City Factory Outlets, L.L.C.,* 81 S.W.3d 121, 122 (Mo.App. 2002).

We first take up Appellants' second point relied on for the sake of clarity. In their second point, Appellants contend the trial court erred in denying their request for a jury trial based upon the jury waiver provisions contained in the guaranties upon which Savannah Place brought suit. Appellants essentially contend that there is no evidence that they knowingly and voluntarily waived their right to jury trial.

"[A] jury trial may be waived by contract." *Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 627 (Mo. banc 1997). "A party in an armslength transaction is charged with the obligation of reading what he signs and, in the absence of a showing of trickery or artifice, he cannot avoid the consequences of the instrument he signs on the ground that he did not know what he was signing." *Taylor & Martin, Inc. v. Hiland Dairy, Inc.,* 676 S.W.2d 859, 871–72 (Mo.App.1984).

Here, there is no question that Appellants signed guaranties as additional security for the two promissory notes in question.[5] Furthermore, the record reveals that Appellants had been involved in real estate development for years, and had routinely dealt with banks. Viewing the evidence in the light most favorable to the judgment, *Searcy v. Seedorff,* 8 S.W.3d 113, 116 (Mo. banc 1999), we discern that Appellant Charles Heidelberg was the brains behind the development of the Savannah Place subdivision. The Appellants have presented no evidence that the guar-

5. The primary guaranty signed by each Appellant provided, *inter alia,* in bolder print than the rest of the provision in the guarantee that: "THE UNDERSIGNED AND THE BANK HEREBY MUTUALLY RELINQUISH AND WAIVE THEIR RIGHT TO TRIAL BY JURY." It also contained provisions setting out that the guarantor's liability "may be enforced regardless of the existence, validity, enforcement [or] nonenforcement of any other guaranties or other obligations."

anties they signed were presented as "take-it-or-leave-it provisions" propositions. *See High Life Sales Co. v. Brown–Forman Corp.*, 823 S.W.2d 493, 497 (Mo. banc 1992). We find no evidence of over-reaching or fraud in connection with the execution of the guaranties by Appellants. *See Taylor & Martin, Inc.*, 676 S.W.2d at 871; *see also* parallel discussion in *High Life Sales Co.*, 823 S.W.2d at 497. Point Two is denied.

Turning now to Appellant's first point relied on, they assert the trial court erred when it removed the case from the jury docket and denied Appellants' request for jury trial arising from their second amended third-party action against Carol Jones and Jones Trust, based on fraudulent misrepresentation, breach of fiduciary duty, breach of contract claim, and promissory estoppel. Likewise, Appellants postulate trial court error from the trial court's denial of Appellant's right to a jury trial on their second amended counter-claim against Savannah Place for its breach of fiduciary duty.

Appellants maintain that Article I, section 22(a) of the Missouri Constitution provides Appellants "with the right of trial by jury, in that the issues raised by the pleadings [are] actions at law for the recovery of monetary damages, to which the jury trial right applies."[6] They cite *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82 (Mo. banc 2003), for the proposition that "ordinarily, a suit that seeks only money damages is an action at law rather than equity." *Id.* at 86.

Savannah Place, Carol Jones, and Jones Trust counter that Appellants' claims, in essence, are equitable claims for contribution and/or indemnification. Accordingly, they maintain Appellants have no right to trial by jury in an equitable action. *See*

*Hunt v. Smith*, 992 S.W.2d 303, 306 (Mo. App.1999). We do not agree.

As a general rule, "[t]he right to trial by jury exists in actions at law but not in actions in equity" or "claims that are adjudicated in administrative proceedings." *Diehl*, 95 S.W.3d at 85; *see also State ex rel. Willman v. Sloan*, 574 S.W.2d 421, 422 (Mo. banc 1978); *Jaycox v. Brune*, 434 S.W.2d 539, 542 (Mo.1968). "In reviewing the cases from the past 183 years, it is quite clear that, ordinarily, a suit that seeks only money damages is an action at law rather than equity." *Diehl*, 95 S.W.3d at 86; *see Willman*, 574 S.W.2d at 422; *Jaycox*, 434 S.W.2d at 542; *Meadowbrook Country Club v. Davis*, 421 S.W.2d 769, 772 (Mo. banc 1967); *Bank of Mo. v. Anderson*, 1 Mo. 244, 245, 1822 WL 1472 (1822).

"[T]he characterization as law or equity depends 'on the issue tendered by the pleadings.'" *Diehl*, 95 S.W.3d at 89 (quoting *Lee v. Conran*, 213 Mo. 404, 111 S.W. 1151, 1153 (1908)). "If the pleadings do not contain an equitable claim, the case is not in equity. The pleader has that option." *Id.*

In Count One of Appellants' second amended third-party claim against Carol Jones and Jones Trust, Appellants seek, *inter alia*, monetary damages for fraudulent misrepresentation, a recognized tort. *See Dolan v. Rabenberg*, 360 Mo. 858, 231 S.W.2d 150, 154 (1950); *see also Sullenger v. Cooke Sales & Serv. Co.*, 646 S.W.2d 85, 89 (Mo. banc 1983).

An action at law wherein damages are sought to be recovered for a fraud is tried as law actions generally are tried, with a right to a jury trial of the issues according to the general principles

---

**6.** Art. I, sec. 22(a) of the Missouri constitution provides that "the right of trial by jury as

heretofore enjoyed shall remain inviolate...."

which support the right of trial by jury in law cases and govern the submission of issues to the jury for determination upon the evidence.

37 Am.Jur.2d *Fraud and Deceit* § 481 (1968) (footnote references omitted); *see* MAI 23.05 (6th Ed.) and cases cited thereunder.

 Count Two of Appellants' second amended third-party claim premises their cause of action on promissory estoppel and seeks, *inter alia,* monetary damages. "Promissory estoppel is simply one type of equitable estoppel." *Resnik v. Blue Cross & Blue Shield,* 912 S.W.2d 567, 572 (Mo.App.1995).

It has been broadly held that estoppel, or the existence thereof, is a question of fact, or that it is ordinarily, usually, or primarily a question of fact, or is for determination by the jury, or ordinarily or generally a jury question, or that it usually presents an issue of fact.

31 C.J.S. *Estoppel* § 163 (1964) (footnote references omitted).

[W]hen the evidence is conflicting, or where it rests in parol and is not admitted, or where different persons might come to different conclusions from the evidence, the question whether or not estoppel exists is for the jury, or the court sitting as a jury, and the finding of the jury or court is in such case conclusive on appeal.

*State ex rel. Richards v. Fidelity & Cas. Co.,* 82 S.W.2d 123, 128 (Mo.App.1935).

 Count Three of Appellants' second amended third-party claim against Carol Jones and Jones Trust—and in their sole and second amended counter-claim against Savannah Place—Appellants assert a cause of action for breach of fiduciary duty and also seek, *inter alia,* monetary damages. "A breach of a fiduciary obligation is constructive fraud." *Klemme v.*

*Best,* 941 S.W.2d 493, 495 (Mo. banc 1997). "Constructive fraud is a long-recognized cause of action." *Id.* While there is authority to the contrary,

it has been held that, where the only relief sought is a money judgment, the fact that the action involves the application of equitable principles as to a fiduciary's duty does not prevent the action from being one at law in which the parties are entitled to a jury trial.

50A C.J.S. *Juries* § 98 (1997). "While a breach of fiduciary duty gives rise to an action for an accounting if the fiduciary has profited from the breach, it also gives rise to non-equitable remedies, such as actions for damages for breach of contract or tort." *Zakibe v. Ahrens & McCarron, Inc.,* 28 S.W.3d 373, 383 (Mo.App.2000).

 Count Four of Appellants' second amended third-party claim against Carol Jones and Jones Trust is premised on a breach of contract claim. "The general rule of the law of contracts is well settled that in certain cases a breach of contract may give rise to two remedies, one an action at law for damages for the breach, the other a suit in equity for the specific performance of the contract." *Weiss v. Leaon,* 359 Mo. 1054, 225 S.W.2d 127, 130 (1949); *see also Harris v. Desisto,* 932 S.W.2d 435, 444 (Mo.App.1996); MAI 26.02 6th ed. (2002) and cases cited thereunder. Here, Appellants are seeking monetary damages resulting from their allegations of breach of contract and are, accordingly, entitled to a jury trial regarding their claim for breach of contract. *Weiss,* 225 S.W.2d at 130.

 Point One is well taken. Appellants are entitled to a jury trial relating to their second amended counter-claim against Savannah Place and their second amended third-party claims against Carol Jones and Jones Trust. Accordingly, Appellants' Points Four through Seven, in-

volving allegations of trial court error arising from Appellants' counter-claim against Savannah Place and third-party claims against Carol Jones and Jones Trust are rendered moot, because these claims are yet to be resolved.

Appellants' third point, in pertinent part, reads as follows:

> The judgment of the trial court for [Savannah Place] against [Appellants] on [Savannah Place's] claim based upon the guaranties is against the substantial weight of the evidence and erroneously applied the law, because the debt of Richmond Heights was extinguished thereby releasing [Appellants] from the guaranties by virtue of Savannah Place being the holder of the Union Planters [Bank] first and second deeds of trust and purchasing the subdivision property at the foreclosure sale on the second deed of trust. . . .

Appellants argue that because Savannah Place acquired title to the subdivision as the purchaser at the foreclosure sale on the second deed of trust, for a bid of $100,000.00, "the $930,000.00 First Note debt and First Deed of Trust were merged and extinguished." Appellants cite *Mid Kansas Federal Savings & Loan Ass'n v. Dynamic Development Corp.*, 167 Ariz. 122, 804 P.2d 1310 (1991) and similar holdings in support of their contention.[7]

Appellants explain that Savannah Place would be unjustly enriched by allowing it to retain the subdivision property while receiving a judgment for the full debt against Appellants. They argue they have an equitable right to have the subdivision property serve as the primary fund to pay the debt secured by the first and second deeds of trust. Appellants point out that new financing in April 1997 from Union Planters Bank in the sum of $1,000,000.00, secured by two deeds of trust against the subdivision property, as well as a Savannah Place financial statement dated May 31, 1997, showing an encumbered value of the subdivision property at $1,211,871.00, are evidence that the value of the property is equal to or exceeds the total debt purportedly owed by Appellants.[8]

We observe that "[a] guarantor agrees to become secondarily liable for the obligation of a debtor in the event the debtor does not perform the primary obligation." *Jamieson–Chippewa Inv. Co. v. McClintock*, 996 S.W.2d 84, 87 (Mo.App. 1999). "A guaranty is ... a species of contract." *Id.* "The rules of construction applicable to a guaranty are the same as applied to other contracts." *Royal Banks v. Fridkin*, 819 S.W.2d 359, 361 (Mo. banc 1991). A guaranty is a "collateral agreement for another's undertaking, and is an independent contract which imposes responsibilities different from those imposed in the agreement to which it is collateral." *Jamieson–Chippewa*, 996 S.W.2d at 87. "A 'continuing' guaranty is one that contemplates guaranteeing a series of possible transactions between the debtor and creditor, rather than only a single such transaction." *Id.*

We also note that "[a]n assignee of a note and deed of trust is vested with all interests, rights and powers possessed by the assignor in the mortgaged

---

**7.** *Mid Kansas* reiterated the primary fund doctrine's theme of a debtor's equitable right to have creditors look first to the land to pay the debt. *Id.* at 1314; *see Ross v. Riggs Nat'l Bank*, 199 B.R. 576, 579 (E.D.Va.1995).

**8.** Savannah Place challenges this figure. It presented evidence explaining that its May 31, 1997, balance sheet showed its estimated value of the land to be $292,711.00 and that there was "construction in progress," commenced *after* the foreclosure, which augmented the value of the property in question.

property." *City Bank & Trust Co. v. Thomas,* 735 S.W.2d 121, 122 (Mo.App. 1987). "[A] transfer of the principal obligation is held to operate as an assignment of the guaranty." *Gateway Frontier Props., Inc. v. Selner, Glaser, Komen, Berger & Galganski, P.C.,* 974 S.W.2d 566, 572 (Mo.App.1998).

We also observe that:

> The concept of merger is one of the most complex and confusing areas of the law of mortgages. The basic doctrine itself can be stated in a few sentences and is deceptively simple. The theory is that when a mortgagee's interest and a fee title coincide and meet in the same person, the lesser estate, the mortgage, merges into the greater, the fee, and is extinguished. Courts also state that whether a merger has occurred depends on the intent of the parties, especially the one in whom the interests unite. If merger is against that party's best interest, it will not be deemed intended by the parties.

GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 6.15 (4th ed.2002) (internal quotes and citations omitted).

"The [RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 8.5 (1997)] takes the view that the merger doctrine is unnecessary and unhelpfully confusing. It states simply that 'the doctrine of merger does not apply to mortgages or affect the enforceability of a mortgage obligation.'" *Id.* (quoting RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 8.5 (1997)).

The doctrine of merger has been extant since the feudal era in England and was intended to serve solely as a title simplification device in an era when writings were not used to release property interests. RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 8.5 cmt. a (1997).

The courts of law also distorted merger by destroying valuable property in mort-gages for the stated reason that the same person cannot be debtor and creditor. In response to the law courts' destructive applications of the doctrine of merger, the courts of equity created an exception to the doctrine: Merger could occur only if the holder of the interests so intended. Chancery generally equated intent with the owner's best interests.

*Id.*

Missouri courts have given recognition to the general principle that "[u]nder the theory of merger, when property is conveyed by a mortgagor to the mortgagee, the equitable title is merged into the legal title, and the lesser estate, or the lien held by the mortgagee, is destroyed." *Riggs v. Kellner,* 716 S.W.2d 3, 4–5 (Mo.App.1986); *see Reed v. Inness,* 102 S.W.2d 711, 716 (Mo.App.1937).

However, our courts have also recognized that mergers are not favored, either in law or equity. *Morgan v. York,* 91 S.W.2d 244, 247 (Mo.App.1936); *see Londoff v. Garfinkel,* 467 S.W.2d 298, 300–01 (Mo.App.1971).

In *Morgan* this Court observed that:

> "'In equity the legal rule of merger is not regarded as inflexible, and the question whether the doctrine of merger applies or not is *determined by the intention of the party in whom the estates unite,* provided that his intention is determined by the party's expressed declaration, or, where there is no declaration, or the party is not capable of electing as to merger, intention will be presumed in accordance with his interest as disclosed by an examination of all the circumstances of the case.'"

*Morgan,* 91 S.W.2d at 248 (quoting *Chrisman v. Linderman,* 202 Mo. 605, 100 S.W. 1090, 1094 (1907)) (emphasis added). Furthermore, this court noted that:

"It has been held that in equity estates are kept distinct when the interest of either party requires it; that merger is not favored in equity, and never takes place contrary to the intention of the parties, or the requirements of justice.... As the merger is for the benefit of him in whom the two estates unite, it will never take place when it is against his interest, or when it is most for his advantage to keep the charge alive."

*Id.* (quoting *Chrisman*, 100 S.W. at 1094). More to the point, we also observed that:

"the lien of a mortgage is not merged in the title acquired by the mortgagee, at a sale of the mortgaged premises under a junior mortgage, or judgment, when it is his intention that there shall be no merger; and in the absence of evidence to the contrary, his intention will be presumed to accord with his interests."

*Id.* at 247–48 (quoting *Hospes v. Almstedt*, 83 Mo. 473, 474, 1884 WL 9075 (1884)).

In *Peters v. Kirkwood Federal Savings & Loan Ass'n*, 136 S.W.2d 369 (Mo.App. 1940), our brethren in the St. Louis Court of Appeals determined that the foreclosure of a second deed of trust and the mortgagee's purchase of mortgaged property did not work a merger as to the indebtedness secured by the first deed of trust. *Id.* at 371. The Court observed that:

[w]e can find no reason or authority to support plaintiff's claim that the foreclosure of the second deed of trust, and the property bid in by the Association, worked a merger as to the indebtedness secured by the first deed of trust. Merger is not favored in equity and is only allowed to promote the intention of parties or for other special reasons, and if no intention is expressed, equity will examine the circumstances and presume an intention in accordance with the advantage to the acquirer of the two estates. It is also held that where the

lesser estate is a deed of trust, the legal estate is in the trustee, and not in the owner of the equity of redemption, so that the acquisition of the secured note by the owner of the equity of redemption does not merge the lesser and greater estate in such owner, for the reason that the legal estate is outstanding in the trustee and thus intervenes to prevent the merger.

*Id.*

 "The parties' intention to effectuate a merger is a question of fact...." *Riggs*, 716 S.W.2d at 5. "[D]eference must be given to the trial court's finding in this determination...." *Id.* "[T]he more recent cases hold that the controlling factor of whether or not a merger occurs is the intention of the party who acquires the greater and the lesser estates." *Londoff*, 467 S.W.2d at 301.

In *Estate of Frantz v. Page*, 426 N.W.2d 894 (Minn.App.1988) five of six shareholders of an incorporated racquetball club ("the club"), including Donald Frantz, executed guaranty contracts in favor of a bank to obtain a first mortgage loan from the bank, and the club defaulted. *Id.* at 896. The estate of Donald Frantz ("the estate") assumed ownership of Mr. Frantz's shares. *Id.* at 896 n. 1. The bank filed a claim against the estate for the entire unpaid principal and interest of the loan, and the probate court allowed the claim. *Id.* at 896. The estate then paid the entire principal balance and accrued interest on the loan and received an assignment of the note, mortgage and guaranties from bank. *Id.*

In an attempt to reduce their losses in the club, shareholders transferred their shares to the estate for the purpose of facilitating the sale of the club's assets to a third party in exchange for a farm and a contract for deed. *Id.* at 897. Ultimately,

the trial court found this resulted in a net gain in the exchange, and a reduction in the amount owed by shareholders to the estate. *Id.*

At some point, the estate proceeded against the shareholders on their guaranties for the deficiency balance under the loan. *Id.* at 896. The trial court held four of the five guarantors jointly and severally liable to the estate for the deficiency balance owed to the estate, and one guarantor, Robert Willwerscheid, appealed. *Id.* Among arguments made by Mr. Willwerscheid was that because the estate had acquired all shares in the club and held both fee title and the mortgage, the mortgage thereupon merged into the fee and was extinguished. *Id.* at 899. Accordingly, he argued that the merger also extinguished the debt and the obligation of the guarantors. *Id.* The appellate court found this argument to be unpersuasive. *Id.* at 899–900.

The appellate court observed that with regard to merger, the " 'essential prerequisite of merger is that the party having both the legal and equitable interests have the intention that the interests should merge.' " *Id.* at 899 (quoting *Lampert Yards, Inc. v. Thompson–Wetterling Constr. & Realty, Inc.,* 302 Minn. 83, 223 N.W.2d 418, 422 (1974)). The court further noted that the "parties' intention is a question of fact," and that the "law presumes that the holder of both legal and equitable estates intends to keep them separate when it is clearly in the holder's interest to keep them apart." *Id.*

Here, Appellants argue the fact that certain lots in the subdivision were sold free of the first lien was evidence establishing that merger occurred. While Carol Jones testified that she would not sell Savannah Place property subject to any lien, she also announced that all trade debts owed by Richmond Heights were to be assumed by Savannah Place. The record also shows that by honoring one contract for deed with Richmond Heights, Savannah Place lost approximately $2000.00; and by honoring another such contract for deed with Richmond Heights, Savannah Place lost approximately $24,000.00. The trial court was not compelled by this evidence to draw the inference that Savannah Place had intended for merger to occur as a result of these activities. The trial court could also draw the inference that these acts were made to promote good will, with the ultimate aim of promoting the sale of future lots and homes, thereby benefiting Savannah Place.

Indeed, the trial court specifically found:

there was no credible evidence presented to establish that a merger of the debt with the title to the real estate occurred such as would extinguish the debt owed by Richmond Heights, Inc., to Savannah Place, Ltd., nor that Savannah Place, Ltd., ever intended for the debt to be extinguished.

▪ Viewing the record in a light most favorable to the judgment of the trial court as we must, *Reardon v. Newell,* 77 S.W.3d 758, 760 (Mo.App.2002), we conclude that it was never the intention of Savannah Place to extinguish the debt in question as a result of its purchase and receipt of an assignment of the Union Planter debt or as a result of Savannah Place's foreclosure on the lien of the second deed of trust. *See Londoff,* 467 S.W.2d at 301.

There was no agreement between the parties that the debt would be extinguished. This is born out by the fact that Savannah Place not only purchased the notes and deeds of trust in question for $1,035,466.13, but also took the additional step of obtaining the assignment of the guarantee instruments. It is through

these guaranties that Savannah Place brought suit against Appellants.

Additionally, Savannah Place never foreclosed on its first deed of trust, thereby precluding the appearance of a colorable claim that a greater estate and a lesser estate coincided in the same entity. *See id.*

Also, David Kessler, the CPA for both Richmond Heights and Savannah Place—while admitting that his bookkeeping procedure was not performed in accordance with generally accepted accounting principals because Carol Jones was the sole owner of both entities—testified he was never advised that Richmond Heights had been released from the debt owed under either promissory note.

Lastly, it was clearly in Savannah Place's interest to keep the legal and equitable estates apart. *Morgan,* 91 S.W.2d at 248; *Estate of Frantz,* 426 N.W.2d at 899.

■ "Judging credibility and assigning weight to evidence and testimony are matters 'for the trial court, which is free to believe none, part, or all of the testimony of any witnesses.'" *Love v. Love,* 72 S.W.3d 167, 171 (Mo.App.2002) (quoting *In re Marriage of Haugh,* 978 S.W.2d 80, 82 (Mo.App.1998)). There was substantial evidence supporting the trial court's findings of fact and conclusions of law that no merger occurred. *Reardon,* 77 S.W.3d at 760.

Because there was no merger, the underlying debt was not extinguished. *See Equitable Sav. & Loan Ass'n v. Lenz,* 148 Wis.2d 817, 436 N.W.2d 902, 903 n. 1 (App. 1989).

Additionally, we note that language contained within the guaranties signed by Appellants shows that the guarantors are not entitled to have the property serve as the primary fund of payment of the debt secured by the first deed of trust.[9] The guaranties specifically provide that:

> The liability of the undersigned hereunder shall not be impaired or affected by any of the following acts or omissions whether occurring with or without the undersigned's notice or knowledge ... any waiver or omission to enforce any right, power of remedy with respect to ... any collateral securing the Liabilities or any part thereof ... or [ ] the failure, neglect, or omission on the part of the Bank to realize ... upon any collateral or security ... of whatever kind, for any or all of the Liabilities.
> 
> * * *
> 
> The undersigned waives all benefit of collateral, if any, which may from time to time secure the Liabilities....
> 
> * * *
> 
> Nothing except cash payment in full of the Liabilities shall release the undersigned from liability under this guaranty. This Guaranty is a guaranty of payment and not a guaranty of collection.

*See* parallel discussions in *United Sav. & Loan Ass'n v. Ozark Cable & Reclamation Co., Inc.,* 821 S.W.2d 587, 589–90 (Mo.App. 1992);[10] *Lemay Bank & Trust Co. v. Law-*

---

9. As best we discern, none of the authorities cited by Appellants, including *Mid Kansas,* involved a factual scenario whereby a guarantor expressly agreed to waive any requirement that the lender pursue the collateral securing the debt. Additionally, we observe that Appellants have not presented this Court with pertinent citations showing that the primary fund doctrine has been adopted in Missouri.

10. In *United Savings & Loan Ass'n,* this Court determined that a savings and loan association was not required to enforce any rights it might have had on a life insurance policy given as collateral for a guaranty before demanding that the guarantor fulfill the guaranty, where there was nothing in the guaranty agreement requiring such exhaustion. *Id.* at 590.

*rence,* 710 S.W.2d 318, 322, 323 (Mo.App. 1986). Point Three is denied.

That part of the judgment entered against Appellants and in favor of Savannah Place on Appellants' counter-claim is reversed.

That part of the judgment entered against Appellants and in favor of Carol Jones and Jones Trust on Appellants' third-party claims is reversed.

The cause is remanded for a jury trial on Appellants' second amended counter-claim against Savannah Place and on Appellants' third-party claims against Carol Jones and Jones Trust.

■ "The law is clear that judgments concerning claims and cross-claims are generally offset and there is only one final judgment for the balance owned the party with the larger judgment." *Mills v. First Nat. Bank of Mexico,* 697 S.W.2d 264, 266 (Mo.App.1985). The judgment of the trial court in favor of Savannah Place and against Appellants in the amount of $1,649,541.55, representing the entire deficiency balance owed under both promissory notes, including interest through June 19, 2002, attorneys' fees and expenses, is held in abeyance pending disposition of Appellants' counter-claim against Respondent, Savannah Place. *See Jaycox,* 434 S.W.2d at 542 and 547; *see also Business Men's Assurance Co. v. Graham,* 891 S.W.2d 438, 457 (Mo.App.1994).

GARRISON, J., and RAHMEYER, C.J., concur.