**STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Appellant,**

v.

**WESTGROVE CORPORATION, et. al., Respondents.**

No. ED 92485.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 2, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 8, 2010.

Application for Transfer Denied April 20, 2010.

John E. Toma, Jr., Melissa M. Zensen, St. Louis, MO, for Appellant.

Wendy S. Menghini, Charles L. Merz, St. Louis, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

The Missouri Highways and Transportation Commission ("MHTC") appeals from the judgment of the trial court granting Westgrove Corporation and David and Patricia Matula's ("the Matula's") motion for summary judgment. We dismiss.

The following facts are not in dispute. On March 16, 1989, Ruth Ballard executed a general warranty deed granting certain real property at issue in this case ("the Property") to Westgrove Corporation[1] ("Westgrove"). On October 26, 1992, Westgrove granted the Bank of South County a deed of trust ("First Mortgage") on the Property in the amount of $180,000.

On May 24, 1994, David Matula[2] signed an agreement ("the Agreement") with Wil-

---

1. William J. Matula was the registered agent, president, treasurer and a director of the Westgrove Corporation. Suzanne E. Matula, William Matula's wife, was the vice-president, secretary and a director of the Westgrove Corporation. On August 21, 1996, the West-grove Corporation was administratively dissolved due to its failure to file its annual report and to pay its franchise taxes.

2. David Matula is William Matula's brother and is married to Patricia Matula.

liam Matula and/or Westgrove in which David Matula agreed to loan William Matula and/or Westgrove money to pay the mortgage on the Property. In return, David Matula was to receive, upon sale of the Property, his principal investment plus nine percent interest plus a portion of the profits from the sale.

Pursuant to the Agreement, David Matula wrote William Matula checks totaling $90,500.00 between June of 1994 and June of 1995. In exchange for this money, Westgrove executed two promissory notes to David Matula on October 26, 2004 for $61,000.00 and on January 3, 1995 for $42,000.00. Also on May 26, 1994, William and Suzanne Matula executed another promissory note to David Matula for $61,000.00.

To secure the promissory notes, Westgrove executed two mortgages on the Property and William and Suzanne Matula executed another mortgage for David Matula. These three mortgages constitute the second mortgage ("the Second Mortgage") on the Property. After the Second Mortgage was recorded, on October 2, 1995, the Matulas signed a sales contract with Westgrove whereby they agreed to purchase the Property for $230,000.00.

On December 18, 1995, Westgrove entered into a stipulation for settlement and judgment with MHTC, stipulating that Westgrove recovered $900,000.00, that is, $350,000.00 less than the amount of the Commissioner's Award of $1,250,000.00 as their compensation for any and all taking or damaging of some of its property. The stipulation provided that Westgrove had to return to MHTC $326,549.04 plus interest at the rate of nine percent per annum. On December 20, 1995, this judgment was signed and entered.

On December 28, 1995, the Matulas closed on the Property and signed another agreement with Westgrove, whereby the Matulas agreed to release the Second Mortgage in exchange for Westgrove agreeing that it would not receive any proceeds from the sale of the Property.

At the closing on December 28, 1995, Westgrove conveyed the Property to the Matulas by general warranty deed. At the same time, the Matulas received a loan from Capitol Bank & Trust (now Union Planters Bank) for $210,000.00, and to secure this loan they executed a promissory note for $210,000.00 and a deed of trust in favor of Capitol Bank and Trust on the Property.

On December 29, 1995, the December 20, 1995 judgment was abstracted.

On August 24, 1998, the Matulas refinanced the Property and executed a promissory note for $350,000.00 for Rockwood Bank, secured by a deed of trust on the Property.

On December 17, 1998, MHTC filed a petition against Westgrove and the Matulas, among others, alleging the December 20, 1995 judgment had not been paid and MHTC was owed $412,109.91. MHTC alleged Gene Overall ("Overall"), the Circuit Clerk of St. Louis County, and the Director of Judicial Administration in St. Louis County failed to properly abstract the December 20, 1995 judgment in a timely manner, which allowed Westgrove to sell the Property without first satisfying MHTC's judgment. MHTC also alleged that at the time the Property was transferred, Westgrove and the Matulas knew MHTC had a judgment against it or knew of the underlying condemnation action and failed to use due diligence to discover the existence of the judgment and thus, Westgrove made the transfer with intent to defraud MHTC. MHTC further argued, for the same reasons, the Matulas did not take title to the Property in good faith.

On October 8, 1999, MHTC voluntarily dismissed its cause of action.[3] On September 28, 2000, MHTC re-filed its petition, substituting John Doe for Overall after he was found to not be a proper party.

On January 16, 2002, MHTC filed an application for order of special execution, requesting that it be permitted to execute on the Property pursuant to the December 20, 1995 judgment pursuant to Section 513.090.5, RSMo 2000[4], which allows MHTC to execute on all real estate whereof Westgrove was seized in law at the time of the rendition of the judgment. The trial court granted the order of special execution on January 16, 2002.

The next day, MHTC filed an execution with the Sheriff of the Circuit Court of St. Louis County. On April 3, 2002, the Sheriff sold the Property to MHTC at a judicial sale for $385,000.00, and MHTC received a deed to the Property from the Sheriff ("the Sheriff's Deed") purporting to convey all right, title, and interest in the Property to MHTC.

On May 9, 2002, the Matulas filed a counterclaim alleging two counts. In Count I, the Matulas sought to quiet title and alleged that they were fee simple owners of the Property, that they were bona fide purchasers, and that their deed was superior to MHTC's. In their alternative claim for relief on Count I, the Matulas contended the doctrine of equitable subrogation should operate to give them a valid lien on the Property in the amount of $283,000. In Count II, the Matulas also requested that the judicial sale be set aside, that the Sheriff's deed be declared void and/or invalid, and that they be declared fee simple owners of the property.

On June 17, 2002, MHTC filed its first amended petition. This petition alleged the same basic facts as the original petition. MHTC's first amended petition included four counts: in Count I, MHTC alleged Westgrove was guilty of actual fraud and conspiracy to defraud; in Count II, MHTC alleged the Matulas were guilty of actual fraud and conspiracy to defraud; in Count III, MHTC alleged Westgrove and the Matulas were guilty of a fraudulent conveyance, and in Count IV, MHTC sought a prejudgment attachment of the Property. In addition, MHTC cited *State ex rel. Missouri Highway and Transp. Com'n v. Overall*, 53 S.W.3d 222, 228 (Mo. App. E.D.2001) ("*Overall I*") in which the court held a judgment lien on the Property arose when the underlying judgment was entered, not when the judgment was abstracted. MHTC also noted that the court found the judgment against Westgrove became a lien on the Property on the date of the judgment, December 20, 1995. *State ex rel. Missouri Highway and Transp. Com'n v. Overall*, 73 S.W.3d 779, 783 (Mo. App. E.D.2002) ("*Overall II*").

MHTC also filed a motion for summary judgment. MHTC contended it was entitled to summary judgment on the Matulas' counterclaim because (1) there is no bona fide purchaser exception to the judgment recording statutes in light of *Overall I* and *II*, and (2) the Matulas are not entitled to equitable subrogation.

The Matulas also filed a motion for summary judgment. The Matulas maintained they were entitled to summary judgment on Counts II, III, and IV of MHTC's petition because they paid fair market val-

---

**3.** On May 13, 1999, the trial court had dismissed Overall, the Circuit Clerk of St. Louis County, because he was not a proper party. Overall's dismissal was appealed and was affirmed in *State ex rel. Missouri Highway and Transp. Com'n v. Overall*, 73 S.W.3d 779, 783 (Mo.App. E.D.2002).

**4.** All further statutory reference are to RSMo 2000 unless otherwise indicated.

ue for the Property, MHTC failed to plead and/or prove the essential elements of its fraud claim, and MHTC's claim for pre-judgment attachment must fail because no judgment existed to support this claim. Further, the Matulas argued they were entitled to judgment as a matter of law on Counts I and II of their counterclaim.

On June 29, 2005, the trial court entered a judgment denying MHTC's motion for summary judgment. The trial court noted *Overall I* and *Overall II* did not establish that there is no bona fide purchaser exception to the judgment recording statutes in Missouri. Further, the trial court stated the Matulas raised issues of fact, which, if proven at trial, would establish they were bona fide purchasers without notice of MHTC's unabstracted judgment lien. In addition, the trial court found MHTC did not meet its burden to show the Matulas were unable to rely on the doctrine of equitable subrogation.

The trial court also issued an order on June 29, 2005 setting the case for a status/scheduling conference with regard to Count I of MHTC's first amended petition, which was against Westgrove.

Also on June 29, 2005, the trial court granted the Matulas' motion for summary judgment. The trial court found that the Matulas were entitled to judgment as a matter of law on MHTC's claim that they committed fraud or conspiracy to defraud because the Matulas were contractually obligated to buy the Property months before the consent judgment even existed so there is no evidence of fraud in the record. The trial court also found the Matulas were entitled to judgment as a matter of

law on MHTC's claim that they committed a fraudulent conveyance because the evidence showed the Matulas paid "reasonably equivalent value" for the Property, and thus one of the elements of a claim for fraudulent conveyance could not be met. Finally, the trial court found because the Matulas prevailed on these two claims, no judgment exists to support MHTC's claim for pre-judgment attachment of the Property. The trial court also found the Matulas were entitled to be equitably subrogated to all rights possessed by the holders of the First and Second Mortgages. The trial court entered judgment in favor of the Matulas on both counts in their counterclaim.

MHTC voluntarily dismissed the "sole remaining claim," Count I, which was the actual fraud and conspiracy to defraud claim against Westgrove. This appeal follows.

Initially, we note there is some disagreement as to whether the trial court's June 29, 2005 judgment granting the Matulas' motion for summary judgment resolved the Matulas' bona fide purchasers for value claim when it ruled they were entitled to equitable subrogation. Thus, there is a question as to whether there is a final judgment for purposes of appeal.

We have a duty to *sua sponte* determine whether we have jurisdiction.[5] *CKH Ass'n, Inc. v. Mistler*, 230 S.W.3d 86, 87 (Mo.App. S.D.2007). If we lack jurisdiction to entertain an appeal, it should be dismissed. *Id.* An appellate court has jurisdiction only over final judgments that dispose of all parties and issues in the case and leave nothing for future determination.

---

**5.** The Missouri Supreme Court has recently held that the appellate court technically does not lack subject matter jurisdiction over judgments that are not final, but rather lacks authority to review those claims as a result of the Supreme Court rules governing final judg-

ments. *See J.C.W. ex rel Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009). While we recognize the distinction, the end result is the same, courts must dismiss appeals where there is no final judgment.

*Id.* If the trial court does not either resolve all the issues as to all parties or expressly designate "there is no just reason for delay," the appeal must be dismissed. *Id.*

The trial court's judgment states, in pertinent part:

WHEREFORE, IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Judgment is entered in favor of Defendants, David and Patricia Matula, and against Plaintiff, the Missouri Highway and Transportation Commission, on Counts I *and II* of the Matulas' Counterclaim and that by reason of the payment of the First Mortgage and release of the Second Mortgage, Defendants, David and Patricia Matula, are entitled to be subrogated to all rights possessed by the holders of the First and Second Mortgages; and that Defendants, David and Patricia Matula, have a lien on the Property in the amount of $283,000 and that this lien was not extinguished by the Judicial Sale. (Emphasis added.)

Thus, the trial court ostensibly ruled on both Counts I and II in the Matulas' counterclaim. However, under Count I, the Quiet Title Action, the Matulas requested fee simple title to the Property because they were bona fide purchasers of the Property or, in the alternative, to be granted a lien on the Property pursuant to the doctrine of equitable subrogation. In Count II, the Matulas sought to set aside the judicial sale and the Sherriff's Deed and to gain fee simple title to the Property based on their bona fide purchaser theory. By granting the Matulas a lien in Count I of their counterclaim, the trial court did not find that the Matulas were bona fide purchasers. Moreover, the trial court's grant of summary judgment for the Matulas on Count II of their counterclaim appears to be inconsistent because the relief they requested in Count II was to be declared fee simple owners of the Property based on the bona fide purchaser theory, and they did not receive this relief despite the judgment in their favor on this claim. Therefore, we must determine if the trial court actually ruled on the claim that the Matulas were entitled to fee simple title to the Property as a result of being bona fide purchasers.

■■■ The construction of a court order is a question of law. *Estate of Ingram v. Rollins*, 864 S.W.2d 400, 402 (Mo.App. E.D.1993). Where a question of law is involved, it is a matter for the independent judgment of the reviewing court. *Id.* at 402–03. The legal principle is firmly established that the operative effect of an order lies in the order or decretal portion itself, rather than in any accompanying recitals, findings, memorandum or opinion. *Id.* at 403. In construing the order, the general rules of construction apply and words and clauses must be construed in accordance with their natural import. *Id.* The order should be examined in its entirety, with an eye to making sense of the language used. *Id.* In construing an ambiguous judgment, our task is to ascertain the intention of the court in entering the order. *Jacobs v. Georgiou*, 922 S.W.2d 765, 769 (Mo.App. E.D.1996). Construction of an ambiguous judgment is much like interpreting other ambiguous written instruments, in that we are required to search the entire record for clues in attempting to divine the intentions of the court. *Id.*; *see also Janes v. Janes*, 242 S.W.3d 744, 748 (Mo.App. W.D.2007).

We note that if we accept the trial court's holding that the Matulas prevailed on Count II of their counterclaim, the judicial sale and the Sherriff's Deed would be set aside and the Matulas would hold fee simple title to the Property because that is the relief they requested in Count II. However, MHTC argues the Matulas do

not have fee simple title to the Property while asserting that there is a final judgment in this case. These assertions are incongruent. Either there is no final judgment because the trial court has not determined whether the Matulas are bona fide purchasers receiving fee simple title to the Property or the Matulas hold fee simple title because the trial court found for them on Count II of their counterclaim.

In arguing there is no final judgment, the Matulas point to the separate judgment issued on the same day denying MHTC's motion for summary judgment, where the trial court noted "the Matulas have raised issues of fact which, if proven at trial, will establish that they were bona fide purchasers without notice of MHTC's unabstracted Judgment lien." In addition, the Matulas note the trial court minutes demonstrate that after the court entered its June 29, 2005 judgment granting the Matulas' motion for summary judgment and giving them an equitable lien on the property, the trial court ordered the parties to brief the bona fide purchasers issue and set that issue for trial. Thus, the trial court orders indicated that it had yet to determine whether the Matulas should receive fee simple title to the Property based on their bona fide purchasers theory. Thus, the facts surrounding the trial court's judgment indicate the judgment was not final.

However, MHTC argues the judgment is final because the trial court's judgment disposed of Count I in a manner which precludes recovery on Count II. Thus, we must determine as a matter of law whether the trial court could grant the Matulas both an equitable lien on the Property and fee simple title to the Property or whether the grant of an equitable lien in the trial court's judgment disposed of all issues in the case.

There can be but one judgment in a case and a judgment is not final for the purposes of appeal unless it disposes of all counts in the petition. *Hallmark v. Stillings*, 620 S.W.2d 436, 437 (Mo.App. S.D. 1981). Where the disposition of one count and the entry of a general judgment thereon precludes a recovery on the other count, there is a final judgment for the purposes of appeal. *Id.*

MHTC contends the Matulas sought mutually exclusive forms of relief. In other words, they sought either title to the Property or a lien based on equitable subrogation. Thus, MHTC maintains this case is similar to *Hallmark*. In *Hallmark*, the plaintiff sought recovery of personal property in replevin or damages in conversion for the same property. *Id.* at 437. In holding that the judgment on the replevin count effectively disposed of the claim for damages in conversion, the court stated "where the disposition of one count and the entry of a general judgment thereon serves to dispose of and settle all questions, eliminates all issues between the parties and precludes a recovery on the other count, there is a final judgment for the purposes of appeal." *Id.* MHTC notes the trial court granted the Matulas an equitable lien on the Property. Thus, MHTC maintains the Matulas could not hold a lien on the Property and have title to it at the same time.

However, this case is distinguishable from *Hallmark*. In *Hallmark*, the plaintiff sought recovery of personal property in replevin or damages in conversion for the same property. *Id.* at 437. If the plaintiff would have succeeded on both claims, there would have been a double recovery. In this case, the Matulas sought fee simple title and an equitable lien. However, the Matulas argue, relying on *Newfeld v. Chemical Dynamics, Inc.*, 784 S.W.2d 240, 242 (Mo.App. E.D.1989), that

they could have a lien on the Property and receive title to the Property because the lesser interest would merge into the greater interest such that there would not be a double recovery.

 In *Neufeld*, the court noted where the greater and lesser estate meet in the same person and in the same right, the lesser estate is immediately annihilated. *Neufeld*, 784 S.W.2d at 242. The concept of merger, simply stated, is that when a mortgagee's interest and a fee title coincide and meet in the same person, the lesser estate, the mortgage, merges into the greater, the fee, and is extinguished. *Savannah Place, Ltd. v. Heidelberg*, 122 S.W.3d 74, 83 (Mo.App. S.D.2003). Courts also state that whether a merger has occurred depends on the intent of the parties, especially the one in whom the interests unite. *Id.* If merger is against that party's best interest, it will not be deemed intended by the parties. *Id.* Missouri courts have given recognition to the general principle that under the theory of merger, when property is conveyed by a mortgagor to the mortgagee, the equitable title is merged into the legal title, and the lesser estate, or the lien held by the mortgagee, is destroyed. *Id.*

Thus, if the Matulas receive fee simple title to the Property based on their bona fide purchasers claim, their equitable lien would merge into that interest, and they would not hold an equitable lien and fee simple title at the same time.[6] As a result, we find the trial court has not disposed of Count I of the Matula's counterclaim in a manner which precludes recovery on Count II of their Counterclaim.

For a final judgment to exist, as a matter of law, we must find the trial court rendered a decision on both Counts I and II of the Matulas' counterclaim. Based on our review of the facts, we find the trial court's purported grant of summary judgment for the Matulas on Count II of their counterclaim cannot be reconciled with its failure to grant the Matulas the relief they requested in Count II of their counterclaim. Thus, we conclude the trial court has not yet decided whether the Matulas are entitled to fee simple title to the Property because the trial court did not decide the issue of whether the Matulas were bona fide purchasers without notice. This conclusion is bolstered by the fact that the trial court set this issue for trial after it entered its judgment and the fact that it noted in the judgment denying MHTC's motion for summary judgment that genuine issues of material fact existed with respect to the Matulas' bona fide purchaser claim. The trial court did not resolve all of the issues in the underlying case, and its judgment is not final. Having determined that there was not a final judgment, we find that we do not have authority to decide this case and we must dismiss it.

We dismiss.

SHERRI B. SULLIVAN, P.J. and PATRICIA L. COHEN, J., concur.

---

6. The question of whether the interests merge is based on the parties' intentions and the facts of each case. *Savannah Place, Ltd.*, 122 S.W.3d at 83. In this case, the Matulas assert the interests would merge so that they would not receive a double recovery. Thus, the record does not contain any evidence of their intent to simultaneously hold an equitable lien and fee simple title to the Property.